UNITED STATES DEPARTMENT OF the INTERIOR, Bureau of Reclamation, Upper Colorado Region, Colorado River Storage Project Power Operations Office; United States Department of the Interior, Bureau of Reclamation, Great Plains Region, Petitioners,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 93–1213.

United States Court of Appeals, District of Columbia Circuit.

Argued May 16, 1994.

Decided June 24, 1994.

Edward Himmelfarb, U.S. Dept. of Justice, Washington, DC, argued the cause, for petitioners. With him on the briefs were Frank W. Hunger, Asst. Atty. Gen., and William Kanter, U.S. Dept. of Justice, Washington, DC.

William E. Persina, Federal Labor Relations Authority, Washington, DC, argued the cause, for respondent. With him on the brief were David M. Smith, Sol., and Frederick M. Herrera, Federal Labor Relations Authority, Washington, DC.

Before: EDWARDS, GINSBURG, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

In 1990, the Bureau of Reclamation ("Bureau"), a division of the Department of the Interior ("DOI"), unilaterally removed certain supervisors from two bargaining units that historically had been "mixed," *i.e.*, consisting of supervisory and non-supervisory personnel. The unions representing the supervisors filed grievances, charging that DOI's failure to give notice of its proposed changes in the composition of the bargaining units violated the governing collective bargaining agreements. The parties submitted the dispute to arbitration, and the arbitrator held that DOI had breached the collective bargaining agreements. The Federal Labor Relations Authority ("FLRA" or "Authority") denied DOI's exceptions to the arbitrator's award. *United States Dep't of the Interior*, 46 F.L.R.A. 247 (1992), *recons. denied*, 46 F.L.R.A. 1202 (1993). DOI petitions for review of the FLRA's order.

Section 7123(a)(1) of the Federal Service Labor–Management Relations Statute ("FSLMRS") generally precludes judicial review of an FLRA order arising from an arbitral award, unless the order "involves an unfair labor practice." 5 U.S.C. § 7123(a)(1) (1988). The arbitrator's decision in this case was limited to the resolution of a grievance arising under the parties' collective bargaining agreements, and it was based on his construction of lawful terms in those agreements. The Authority, in its review of the case, found no basis to overturn the arbitrator's construction of the collective bargaining agreements. Because we find the Authority's order does not "involve" an unfair labor practice within the meaning of our precedent, we lack jurisdiction to consider DOI's petition. We therefore deny DOI's petition for review and grant the Authority's cross-petition for enforcement.

## I. BACKGROUND

The underlying dispute in this case is between DOI and Locals 1759 and 2159 of the International Brotherhood of Electrical Workers ("IBEW"), the union representing prevailing wage employees [1] in the Bureau's Upper Colorado and Great Plains regions. From the early 1960s until 1990, supervisory personnel holding Foremen II positions in the Upper Colorado region and Foremen II and III positions in the Great Plains region were included in mixed bargaining units. The collective bargaining agreements in effect at all times relevant to this case provided that either party had the right to demand negotiations on any provision of the agreement by serving written notice on the other side stating the nature of the proposed

change and the reasons therefor. The agreements further provided that they would be renewed automatically each year unless amended or terminated in accordance with contractually-prescribed procedures.

In early 1990, both DOI and IBEW gave written notice of the issues they sought to negotiate that year. DOI did not give contractual notice that it sought to alter the composition of the bargaining units; instead, an employer representative read a prepared statement at the negotiating table announcing that DOI intended to remove supervisory foremen from the bargaining units pursuant to *United States Department of Energy, Western Area Power Administration v. FLRA*, 880 F.2d 1163 (10th Cir.1989) ("*WAPA*"), and that it would no longer bargain over the foremen's wages or conditions of employment. In *WAPA*, the Tenth Circuit reversed an FLRA decision which found that the agency had committed an unfair labor practice by refusing to bargain over wages with certain supervisors and by refusing to recognize the supervisors as part of a bargaining unit that the Authority had previously recognized. *Id.* at 1172.[2]

In response to DOI's ultimatum, the unions filed grievances alleging that the agency had violated the parties' existing collective bargaining agreements. Both sides agreed to submit the dispute to arbitration, but they were unable to agree on a statement of the issues. The arbitrator eventually framed the issues as follows: (1) whether the case was arbitrable, and (2) whether DOI violated the collective bargaining agreements when it unilaterally removed Foremen II and III from

1. "Prevailing rate employees are a category of federal workers whose wages are not determined by the federal General Schedule. Rather, their wages generally are determined by the wages prevailing in the industry in which they work, pursuant to a wage survey mechanism." *United States Info. Agency v. FLRA*, 895 F.2d 1449, 1451 (D.C.Cir.1990) (citation and quotations omitted).

2. Like *WAPA*, our recent decision in *United States Department of the Interior v. FLRA*, 23 F.3d 518 (D.C.Cir.1994) ("*FLRA I*"), considered whether an agency (there, DOI) had committed an unfair labor practice by unilaterally refusing to recognize a mixed unit or to bargain over

supervisors' employment terms. In *FLRA I*, we analyzed the text and legislative history of section 704 of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 5343 note (1988), and section 9(b) of the Prevailing Rate Systems Act ("PRSA"), *id.*, and concluded that those statutes preserved the inclusion of supervisors in historically mixed units *only if* the employer agreed to such inclusion. *See FLRA I*, at 520 (mixed units are a permissive subject of collective bargaining); *see also WAPA*, 880 F.2d at 1170 ("At most, Section 704 authorizes mixed units if WAPA consents."). *FLRA I* and its bearing on the instant case are discussed more fully below.

the bargaining units. Neither side objected to this statement of the issues.

The arbitrator had no difficulty in concluding that the grievance involved a dispute over the meaning of the parties' collective bargaining agreements and posed an issue that was within the scope of the applicable grievance/arbitration provisions. The arbitrator then analyzed the terms of the notice and renewal provisions of the collective bargaining agreements, and held that DOI had breached the contracts by unilaterally removing foremen from the bargaining units. The arbitrator found that *WAPA* was distinguishable from the present case because, in *WAPA*, "there was no existing Collective Bargaining Agreement that had been negotiated between the parties which historically placed foremen in the bargaining unit." Joint Appendix ("J.A.") 42. On this point, the arbitrator said:

> [W]hat the [*WAPA*] Court was essentially saying was that the FLRA's unit determination was erroneous because the FLRA had no authority to impose upon the parties a mixed unit that had not been established by mutual agreement.... That obviously is a distinction between the *WAPA* case and the present case because in the present case the Bureau has consistently, for many years, agreed to a mixed bargaining unit.

*Id.* at 43. While acknowledging that DOI was not compelled to permit foremen to remain in the bargaining unit, the arbitrator concluded that DOI had violated the collective bargaining agreements by unilaterally removing the foremen without giving the contractually-required notice. In light of the automatic renewal provisions in the agreements, the arbitrator held that the foremen's inclusion in the units had been renewed.

DOI filed exceptions arguing, *inter alia,* that the arbitral award was inconsistent with 5 U.S.C. § 7112, which generally prohibits certification of supervisors in mixed units, and that the arbitrator erred in requiring notice regarding the removal of the foremen because bargaining unit status is not a "condition of employment" whose negotiability is preserved under section 704 of the CSRA. *See* 5 U.S.C. § 5343 note (preserving nego-

tiability of "[t]hose terms and conditions of employment ... which were the subject of negotiation ... prior to August 19, 1972 ... without regard to any provision of chapter 71 of title 5," of which 5 U.S.C. § 7112 is a part); *see generally FLRA I,* at 523–25; *WAPA,* 880 F.2d at 1168–72.

By decision dated October 23, 1992, the FLRA denied DOI's exceptions to the arbitrator's award. The FLRA declined to follow *WAPA* "to the extent that the decision ... holds that section 704 of the CSRA does not permit negotiations over the continuation of mixed units under any circumstances or that such negotiations may occur only if consented to by an agency." J.A. 238. The FLRA then held that the foremen's unit status was negotiable under section 704 and that the relevant provisions of the collective bargaining agreements were enforceable in arbitration. DOI moved for reconsideration and requested a stay, but the FLRA denied the motion, finding that the agency merely sought to relitigate issues resolved in the initial decision and that no extraordinary circumstances were shown.

The primary question presented here is whether this court has jurisdiction to entertain DOI's petition for review under the FSLMRS. Section 7123(a)(1) of that statute generally prohibits judicial review of FLRA orders concerning arbitral awards, unless those orders also "involve[ ] an unfair labor practice." 5 U.S.C. § 7123(a)(1) (1988). We conclude that the instant order does not involve an unfair labor practice; thus, we deny DOI's petition. Before turning to that analysis, however, we pause to clarify the scope of our recent holding in *FLRA I* as it bears on this case.

## II. DISCUSSION

### A. *The Applicability of FLRA I*

The decision in *FLRA I* was rendered after oral argument was heard in the instant case. Although the parties did not have the benefit of our holding in *FLRA I* when preparing their briefs in this case, both sides urged that the resolution of *FLRA I* likely would control the outcome on the merits here. Because the parties apparently failed

to appreciate significant distinctions between the two cases, we think it necessary to clarify the scope of our holding in *FLRA I.* In particular, we wish to dispel any erroneous notions regarding what it means for a topic to be a *permissive* subject of bargaining.

In *FLRA I,* we reviewed an FLRA order which found that DOI had committed an unfair labor practice when DOI unilaterally refused to bargain over the inclusion of Foremen II and III supervisors in two historically mixed bargaining units. In that case, as here, DOI had long agreed to mixed units, but it read *WAPA* to provide authority for its unilateral change in position. No allegation was made, as it was here, that DOI had failed to give contractually-required notice before refusing to bargain. We held that because DOI and the unions had negotiated contracts covering mixed units prior to 1972, section 9(b) of the PRSA and section 704 of the CSRA preserved the negotiability of including the Foremen II and III positions in such units. *FLRA I,* at 522–23. Most critically, however, we held that their inclusion was preserved only as a permissive, not a mandatory, subject of bargaining, *see id.* at 524–25, so we concluded that DOI had not violated any duty to bargain in refusing to negotiate over the inclusion of supervisors in the units.

By definition, a permissive subject of bargaining is one as to which the parties may, but need not, agree to negotiate. *Local 666, Int'l Alliance of Theatrical Stage Employees v. NLRB,* 904 F.2d 47, 50 (D.C.Cir.1990) ("Parties to a collective bargaining agreement are also free to propose ... 'permissive' subjects, but they may not *insist* on such subjects to the point of impasse or condition agreement upon inclusion of these subjects.") (emphasis in original). Our holding that mixed bargaining units are a permissive subject under the PRSA and CSRA, therefore, necessarily means that the parties voluntarily may agree to the inclusion of supervisors in a unit, as DOI and IBEW did in this case. Such an agreement is enforceable according to the terms of the collective bargaining agreement in which it is embodied. *See Allied Chemical & Alkali Workers of Am. v. Pittsburgh Plate Glass Co.,* 404

U.S. 157, 188, 92 S.Ct. 383, 402, 30 L.Ed.2d 341 (1971) (holding that "remedy for a unilateral mid-term modification to a permissive term lies in an action for breach of contract").

It appears to us that both parties fail to comprehend the importance of the *contract* element presented in this case. In *FLRA I,* the unions never claimed that DOI's conduct violated the parties' agreements. In this case, by contrast, the unions' *sole* claim was that DOI's actions violated the collective bargaining agreements governing Great Plains and Upper Colorado region employees, because DOI failed to give contractually-prescribed notice before removing Foremen II and III employees from the bargaining units. The arbitrator agreed that this contract question was the only substantive issue presented, and held that, because DOI had failed to give proper notice of its intent to alter the composition of the units, the collective bargaining agreements were automatically renewed by their terms. In other words, the parties' agreement on the permissive issue of mixed units remained in effect as a result of DOI's breach of the procedural steps it had, *by contract,* agreed to observe.

This case is not governed by *FLRA I,* because *FLRA I* considered only whether DOI violated its statutory duty to bargain by declining to negotiate over mixed units. Because neither side can be forced to negotiate over a permissive subject, we found no violation of that duty. The instant case, however, does not present a statutory duty to bargain issue. Moreover, as mixed units are merely a permissive subject of bargaining, the parties are bound *only* by the terms of their contract. Thus, for example, if DOI in this case had given contractually adequate notice of its intention to remove supervisors from the bargaining units, the matter would have been at an end and DOI would have had no further obligation to the unions. Neither the arbitrator nor the FLRA would have been free, given our holding in *FLRA I,* to find any statutory duty to bargain. *See Pittsburgh Plate Glass,* 404 U.S. at 187, 92 S.Ct. at 401 ("By once bargaining and agreeing on a permissive subject, the parties, naturally,

do not make the subject a mandatory topic of future bargaining.").

### B. *Jurisdiction*

The Authority argues that we lack jurisdiction to review the order challenged in this case because that order itself involved review of an arbitral award. Section 7123(a)(1) of the FSLMRS precludes judicial review of orders involving arbitrators' awards "unless the order involves an unfair labor practice...." 5 U.S.C. § 7123(a)(1). DOI contends that the case before the Authority did "involve" an unfair labor practice. Our analysis of this issue is controlled by *Overseas Education Association v. FLRA*, 824 F.2d 61 (D.C.Cir.1987) (*"OEA"*), the leading case in this circuit to analyze section 7123(a)(1). We conclude that the instant order does not "involve" an unfair labor practice within the meaning of the statute as we interpreted it in *OEA;* thus, we lack jurisdiction to entertain DOI's petition for review.

As we explained in *OEA,* the FSLMRS establishes a two-track system for resolving labor disputes. *See id.* at 62–63. Under the first track—not pursued by the unions in this case—a party complaining of an unfair labor practice may file a charge with the Authority's General Counsel, who will investigate and issue a complaint, if warranted. The matter is then adjudicated by the FLRA; and the decision of the FLRA is subject to judicial review. 5 U.S.C. §§ 7118(a), 7123. Under the second track, an aggrieved party may pursue the negotiated grievance procedure provided by its collective bargaining agreement. (The FSLMRS requires all such agreements to include grievance procedures. *Id.* § 7121(a)(1).) Either party may seek binding arbitration if a grievance cannot be resolved. *Id.* § 7121(b)(3)(C). Limited review of an arbitral award may be sought before the Authority, but judicial review of the FLRA's determination is unavailable "unless the order involves an unfair labor practice under section 711[6]" of the statute.[3] *Id.* § 7123(a)(1).

The parties understandably rely heavily on *OEA* for their argument about what it means

for an order to "involve" an unfair labor practice. We think, however, on the facts of this case, that DOI seriously misreads our decision. *OEA* began by recognizing that, under the two-track dispute resolution system, "a particular action may be capable of characterization as either a statutory unfair labor practice or a violation of the collective bargaining agreement." *OEA,* 824 F.2d at 63. If the aggrieved party chose to go the grievance procedure route, but characterized its claim as a statutory unfair labor practice, judicial review certainly would be available. *Id.* at 64. However, if the aggrieved party characterized its claim as a violation of the collective bargaining agreement, judicial review could be had only if the claim "involve[d]" an unfair labor practice. We held that the term "involves" required

> that a statutory unfair labor practice be discussed in some way in, or be some part of, the Authority's order.
>
> ... An FLRA holding that there was (or was not) a statutory unfair labor practice committed in a particular case would obviously satisfy this somewhat amorphous standard, but something short of a paradigm case may also sufficiently "involve" a statutory unfair labor practice to confer jurisdiction.

*Id.* at 65. After canvassing the law of other circuits, *OEA* endorsed the formulation announced by the Ninth Circuit, *i.e.,* "the standard is that a statutory unfair labor practice *must be either an explicit ground for, or be necessarily implicated by, the Authority's decision."* *Id.* at 67–68 (emphasis added; footnote omitted).

The instant case falls far short of this standard. DOI's first argument—that the unions presented their claim as an unfair labor practice—is belied by the record. While it is true that in two places in their post-hearing brief, the unions stated that DOI had committed an unfair labor practice, these claims were essentially gratuitous, and certainly were not the thrust of the unions' argument. The unions commenced their argument with the proposition that "[t]his case

---

**3.** Although the FSLMRS actually refers to section 7118, we have recognized that the correct reference is to section 7116. *See OEA,* 824 F.2d at 63 n. 2.

is governed by simple contract law," J.A. 170, and their brief is devoted to analyzing the effect of the automatic renewal and notice clauses in the collective bargaining agreements, and to distinguishing *WAPA,* the Tenth Circuit decision which held, *in the context of an unfair labor practice charge,* that the Bureau had no duty to bargain with unions over the removal of supervisory employees from mixed bargaining units. *See WAPA,* 880 F.2d at 1172. Indeed, the unions' brief does not so much as cite 5 U.S.C. § 7116, the section of the FSLMRS which defines unfair labor practices and on which the unions necessarily would rely for their putative unfair labor practice claim. DOI's assertion that, by virtue of two passing references to an unfair labor practice, the unions "pursued" their claim as an unfair labor practice is fanciful; and this contention surely fails to meet our requirement that the conduct *"actually* be ... characterized and the claim pursued, by whatever route, as a statutory unfair labor practice, *not as something else." OEA,* 824 F.2d at 66 (emphasis added).

There also is nothing material in either the arbitrator's decision or the FLRA's order to support DOI's contention that this case involves an unfair labor practice. The arbitrator's decision clearly frames the issue as one arising solely under the parties' collective bargaining agreements. J.A. 35. The arbitrator analyzes the case as an alleged breach of contract and finds for the unions on that basis. In turn, the FLRA's decision repeats the arbitrator's statement of the issue as one sounding in contract and concludes that the arbitrator's decision was sound.

DOI places great weight on the single statement, made by the arbitrator and subsequently quoted by the Authority, that "an argument could be made *in an appropriate forum* that the instant case could be distinguished from [*WAPA*] and, therefore, ... the Bureau's actions constituted an unfair

labor practice." J.A. 43, 232 (emphasis added). Again, neither the arbitrator nor the FLRA so much as cites the relevant unfair labor practice provision of the FSLMRS. This passing reference does not satisfy the requirement that an unfair labor practice be "an explicit ground for" or "necessarily implicated by" the Authority's decision. *OEA,* 824 F.2d at 68. To the contrary, by this statement, both the arbitrator and the FLRA *reject* the notion that an unfair labor practice is any part of the case before them.

Finally, in its petition for reconsideration of the Authority's order, DOI argued that the arbitrator actually had found that an unfair labor practice was committed and urged the FLRA to "acknowledge that this case also involves an unfair labor practice for failure to bargain on behalf of the supervisors." J.A. 265. It is hard to see this plea as anything other than DOI's bald attempt to create a basis for judicial review, and the Authority correctly responded that the arbitrator had not ruled on the unfair labor practice issue. DOI cannot create an unfair labor practice issue simply by alleging that one exists and forcing the FLRA to respond to that baseless contention. If it could, the stricture of section 7123(a)(1) would be entirely meaningless.

From this record, we think it clear that an unfair labor practice was neither "an explicit ground for," nor "necessarily implicated by, the Authority's decision." *OEA,* 824 F.2d at 68. Because an unfair labor practice is not sufficiently "involved," DOI is foreclosed from seeking judicial review of the FLRA's order.[4]

## III. CONCLUSION

Because the challenged order concerns an arbitral award but does not involve an unfair labor practice, we lack jurisdiction to consider DOI's petition for review. Accordingly, we deny DOI's petition for review and grant

4. DOI argues separately that jurisdiction is available under the doctrine of *Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 183, 3 L.Ed.2d 210 (1958), which provides that judicial review otherwise precluded may be had when an agency acts "in excess of its delegated powers and contrary to a specific [statutory] prohibition." Because,

as we determined in *FLRA I,* the relevant statutes permit mixed units when agreed to by the parties, there is no merit to DOI's claim here that the FLRA violated the FSLMRS by certifying a mixed unit in this case. Thus, DOI's argument for jurisdiction based on *Leedom v. Kyne* necessarily fails.

the Authority's cross-petition for enforcement.

*So ordered.*