312 F.3d 465
 COMMONWEALTH COMMUNICATIONS, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
International Brotherhood of Electrical Workers Local Union No. 98, Intervenor.
 No. 01-1401.
 United States Court of Appeals, District of Columbia Circuit.
 Argued November 14, 2002.
 Decided December 13, 2002.
 
 On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board.
 Matthew Lee Wiener argued the cause for petitioner. With him on the briefs was Jerome A. Hoffman.
 Joan E. Hoyte, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Robert J. Englehart, Supervisory Attorney. Charles P. Donnelly, Supervisory Attorney, entered an appearance.
 Richard B. Sigmond was on the brief for intervenor in support of respondent.
 Before: GINSBURG, Chief Judge, EDWARDS, Circuit Judge, and SILBERMAN, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 Commonwealth Communications, Inc. ("CCI") petitions for review of a National Labor Relations Board ("NLRB" or "Board") decision, and the Board cross-applies for enforcement. The NLRB held that the petitioner violated sections 8(a)(5) and (1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(5), (1), by failing to comply with a request from Local 98, International Brotherhood of Electrical Workers ("Union" or "Local 98") for specified information concerning any work performed by CCI's employees within the Union's jurisdiction in the area of Philadelphia, Pennsylvania. See Commonwealth Communications, Inc. and Int'l Bhd. of Elec. Workers Local Union 98, AFL-CIO-CLC, 335 N.L.R.B. No. 62, 2001 WL 1039901, at 6 (2001). In reaching this conclusion, the Board found that CCI and the Union were signatories to a collective bargaining agreement covering all CCI jobsites within the jurisdiction of the Union. Id. 2001 WL 1039901, at 5. On this basis, the Board held that CCI was obliged to furnish the information sought by the Union, because it was relevant to unit employees represented by Local 98. Id. 2001 WL 1039901, at 6.
 
 
 2
 The Board rejected CCI's claim that the parties' contract was a single-project agreement limited to work done by CCI employees at the Philadelphia airport, because, in the Board's view, the parties' written agreement unambiguously covers multiple sites. The NLRB therefore refused to consider parol evidence indicating that the parties orally agreed to limit the scope of the agreement to one specific job. Id. 2001 WL 1039901, at 1, 6.
 
 
 3
 We find the parties' collective bargaining agreement ambiguous on the question of its scope. Accordingly, we must look to parol evidence to determine the parties' intent. Upon review of the parol evidence, we find that the Board erred in concluding that the agreement covers multiple sites. We grant CCI's petition and deny the Board's cross-application for enforcement.
 
 I. BACKGROUND
 
 4
 In May 1995, petitioner CCI, a Pennsylvania company in the business of installing and servicing local telephone and telecommunications services, was awarded a subcontract by Lombardo and Lipe, a Philadelphia electrical contractor, to perform telephone cabling work at the Philadelphia airport. Lombardo and Lipe was a signatory to the Union's area collective bargaining agreement, which required signatory employers to subcontract electrical work within Local 98's jurisdiction only to other employer signatories. The petitioner had no relationship with Local 98, because, since 1981, CCI's employees had been represented by the Communications Workers of America ("CWA"). Lombardo and Lipe strongly encouraged the petitioner to work with Local 98 on the airport project. The petitioner received CWA's consent to use Local 98 members on the airport subcontract to perform the less-skilled work, while CWA members would perform the skilled work.
 
 
 5
 On July 20, 1995, CCI's vice president and director of employee relations met with Local 98's business manager and business agent. At the meeting, the Union presented CCI with two copies of Local 98's preprinted "Letter of Assent," a form through which employers become signatories to Local 98's area bargaining agreement ("Commercial Agreement"). One copy was a one-page document, and the other copy was attached to the Commercial Agreement as a signature page. In the blank space calling for an indication of the work to be covered by the agreement, Local 98 had typed the words "Inside Commercial." The collective bargaining agreement contained no recognition clause; however, Union and CCI officials agreed orally that the agreement covered only the airport job. The parties reviewed the Commercial Agreement and signed the Letter of Assent.
 
 
 6
 On January 20, 1997, Local 98 sent the petitioner a written request for information concerning any and all work performed by CCI's employees in Local 98's jurisdiction after July 20, 1995, including the employees assigned to the work. Local 98 representatives apparently had seen CCI's trucks at Philadelphia area jobsites other than the airport, and had heard that CCI was hiring non-union workers. On February 5, 1997, CCI responded to Local 98's request by sending only information pertaining to the airport job and declining to furnish any information pertaining to any other job.
 
 
 7
 The Union then filed an unfair labor practice charge, alleging violations of § 8(a)(1) and (5) of the NLRA, and a complaint was issued. During the hearings before the Administrative Law Judge ("ALJ"), the Board claimed that, pursuant to the July 20, 1995 agreement, Local 98 represented all CCI employees who were working at jobsites within Local 98's geographical jurisdiction, and thus had a right to information about all of CCI's jobs in the area. CCI maintained that the disputed collective bargaining agreement applied only to the single airport job. On July 13, 1999, the ALJ dismissed the complaint. 335 N.L.R.B. No. 62, at 21. The ALJ first found that the Letter of Assent and the Commercial Agreement were ambiguous as to the scope of the unit. Id. 335 N.L.R.B. No. 62, at 19. The ALJ then considered parol evidence, which she found to indicate clearly that the parties had understood their agreement to be limited to the airport job. Id. 335 N.L.R.B. No. 62, at 19-20. Based on that evidence, the ALJ concluded that the agreement covers only the airport job, and that Local 98 had no basis for requesting information about the company's other jobs. Id. 335 N.L.R.B. No. 62, at 20-21.
 
 
 8
 On August 27, 2001, the NLRB reversed, holding that CCI engaged in an unfair labor practice by failing to comply with Local 98's request for information. Id. 335 N.L.R.B. No. 62, at 6. The NLRB found the parties' collective bargaining agreement "unambiguously multisite in scope," and, consequently, did not consider extrinsic evidence. Id. 335 N.L.R.B. No. 62, at 1. Having found that the agreement covers all jobs within Local 98's jurisdiction, the Board ordered CCI to comply with Local 98's request for information. Id. 335 N.L.R.B. No. 62, at 6. Chairman Hurtgen dissented. He found that the Commercial Agreement and the Letter of Assent together were ambiguous as to the scope of the unit, and that consideration of parol evidence was appropriate. Id. 335 N.L.R.B. No. 62, at 9. Based on the clear and unambiguous parol evidence, Chairman Hurtgen found that the contract was limited to the airport site, and that the company was justified in not complying with Local 98's request for information about other sites. Id. CCI filed a petition for review in this court.
 
 II. ANALYSIS
 
 9
 This court owes no deference to the Board's interpretation of a disputed collective bargaining agreement. BP Amoco Corp. v. NLRB, 217 F.3d 869, 873 (D.C.Cir.2000); Wilson & Sons Heating & Plumbing, Inc. v. NLRB, 971 F.2d 758, 760 (D.C.Cir.1992). Therefore, we construe the language of the agreement at issue de novo to determine whether the agreement covers one site or multiple sites.
 
 
 10
 The first issue to be resolved in this case is whether the agreement between CCI and Local 98 is ambiguous with respect to the scope of the unit. In particular, does the agreement cover multiple jobsites or just the single airport job? The parol evidence in this case, confirmed by the clear findings of the ALJ, which the NLRB did not disturb, indicates that the parties intended to restrict the agreement to the airport site. Resort to parol evidence is only appropriate when the written contract is ambiguous. Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 940 F.2d 704, 707-08 (D.C.Cir.1991); Appalachian Power Co. v. Fed. Power Comm'n, 529 F.2d 342, 347-48 (D.C.Cir. 1976); News Union of Baltimore v. NLRB, 393 F.2d 673, 678 (D.C.Cir.1968). "In the absence of ambiguity in the collective bargaining agreement, however, we have no cause to examine extrinsic evidence of the parties' intent." Am. Postal Workers Union, AFL-CIO, 940 F.2d at 708. The petitioner claims that the written agreement is "entirely silent" on whether it covers multiple sites or only the airport job, because the agreement contains no union recognition clause, description of the bargaining unit, or definition of the work it covers. The Board, in turn, contends that, although the agreement lacks a recognition clause, the Letter of Assent and the Commercial Agreement contain language that makes clear that the contract is multisite in scope. The petitioner is right and the Board is wrong.
 
 
 11
 There are a number of factors that militate in favor of the petitioner's position regarding the meaning of the contract. First, as both parties acknowledge, the contract contains no recognition clause, which would traditionally indicate the agreement's scope. Therefore, nothing in the agreement explicitly demarcates a multisite bargaining unit covering the petitioner's employees.
 
 
 12
 The NLRB points to § 2.03(h) of the Commercial Agreement in support of its contention that the contract is unambiguously multisite in scope. Section 2.03(h) provides:
 
 
 13
 [I]n order to protect and preserve, for the Employees covered by this Agreement, all work heretofore performed by them, ... it is hereby agreed as follows: If and when the employer shall perform any work of the type covered by this Agreement, ... the terms and conditions of this Agreement shall be applicable to all such work.
 
 
 14
 Commercial Agreement § 2.03(h), reprinted in Appendix ("App.") 271. This provision refers to "any work of the type covered by this Agreement," and "all such work." But this section does not actually specify the type of work covered by the agreement, which is at issue here. The NLRB contends that this section clearly indicates that the agreement unambiguously covers multiple sites, and that any ambiguity that may exist in this language is only as to the type of work covered (i.e., electrical or other work), not as to the scope of the agreement (i.e., one site or multiple sites). This argument is hard to fathom. If, as the NLRB concedes, the agreement is ambiguous as to the type of work covered, this undisputed ambiguity creates ambiguity as to the scope of the unit. Work at different jobsites does not necessarily involve the same type of work at each jobsite. If it is unclear whether one or multiple types of work are covered, it can be unclear whether one or multiple sites are covered. Therefore § 2.03(h) does not unambiguously indicate a multisite bargaining unit.
 
 
 15
 Likewise, the Board's reliance on § 2.03(c) of the Commercial Agreement, which provides that the "Employer agrees to notify ... the Union ... of the receipt of all contracts secured within its jurisdiction," is misplaced. See id. § 2.03(c), App. 270. An employer's agreement to notify a union of all contracts received does not answer the question whether the agreement covers one site or multiple sites. For example, even in the context of a one-site bargaining unit, the Union might want an employer to notify it of all contracts received in anticipation of future contracts with respect to the same site, namely the airport.
 
 
 16
 Furthermore, § 2.09 of the Commercial Agreement provides that the employer "will recognize the Union as the exclusive collective bargaining agent for all employees performing electrical work within the jurisdiction of the Union on all present and future job sites, if and when a majority of the Employer's employees authorized the Union to represent them in collective bargaining." Id. § 2.09, App. 272-73. The Letter of Assent provides that,
 
 
 17
 if a majority of [the Employer's] employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.
 
 
 18
 Letter of Assent, App. 314. Chairman Hurtgen's dissent convincingly demonstrates the ambiguity arising from § 2.09: My colleagues interpret the contract as covering multiple sites, with the proviso that some sites would remain under Section 8(f) and others (where majority is shown) would be under Section 9. I shall assume arguendo that this is a reasonable reading of the contract. However, another reasonable reading of the contract is that the Respondent recognized the Union as the 8(f) representative for the airport project, but it was unwilling to recognize the Union at all for other sites unless majority status was shown. That status has not been shown.
 
 
 19
 335 N.L.R.B. No. 62, at 9 (emphasis omitted). We agree that both readings are reasonable. Because there is more than one reasonable reading of the parties' agreement, we find that the agreement is ambiguous on the question of the scope of the unit.
 
 
 20
 We must therefore look beyond the written agreement, and consider extrinsic evidence on the question. The extrinsic evidence in this case, confirmed by the clear findings of the ALJ, which were not disturbed by the Board, indicates that the parties understood the agreement to cover only the airport site. The ALJ credited testimony that the petitioner made clear that CWA represented the petitioner's employees, and that any agreement with Local 98 would cover only the airport subcontract. Id. 335 N.L.R.B. No. 62, at 20. The ALJ also credited testimony that, absent CWA's consent, the petitioner would not have entered into the subcontract for the airport job, and that CWA's consent was limited to the airport job. Id. Local 98 assured the petitioner that the agreement was limited to the airport project. Id. 335 N.L.R.B. No. 62, at 13.
 
 
 21
 We find that this extrinsic evidence makes clear that the parties understood the scope of the agreement to be limited to the airport job. Therefore, we hold that the Board erred in concluding that the bargaining unit covered by the disputed agreement is multisite in scope.
 
 III. CONCLUSION
 
 22
 For the foregoing reasons, we grant the petition for review and deny the Board's cross-application for enforcement.