# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 15, 2006      Decided October 27, 2006

No. 05-1405

NATIONAL TREASURY EMPLOYEES UNION,
PETITIONER

V.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of a Decision and Order of the
Federal Labor Relations Authority

———

*Barbara A. Atkin* argued the cause for petitioner. With her on the briefs were *Gregory O'Duden* and *Elaine Kaplan*.

*James F. Blandford*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief was *William R. Tobey*, Acting Solicitor.

Before: RANDOLPH and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: The National Treasury Employees Union petitions for review of a decision of the Federal Labor Relations Authority setting aside an arbitrator's award favorable to the union. The underlying dispute involves arrangements between local union chapters and certain IRS regions, under which the IRS regions promised time-off awards to employees who volunteered for seasonal customer service duty.

When the IRS refused to award the promised time off during the 2003 tax filing season, the union pursued grievances, claiming that the refusal was a violation of the local agreements and constituted an unfair labor practice under 5 U.S.C. § 7116. An arbitrator agreed with the union, and the IRS filed exceptions with the FLRA. The Authority ruled that provision of the awards was barred by 5 U.S.C. § 4502(e), which allows time-off awards only for "superior accomplishment or other personal effort that contributes to the quality, efficiency, or economy of Government operations." The Authority supposed that the agreements called for awards even to volunteers who performed customer service duties below a minimally successful level.

We find, however, that the agreements are ambiguous about whether they obliged the IRS to give awards even to inadequate volunteers, and note that the record evidence may be in conflict as to the parties' contemporaneous understanding. Because the Authority did not address the ambiguities in the agreements, we set aside its holding and remand for further proceedings.

* * *

Each year during tax filing season, January 1 through April 15, the IRS experiences a surge of taxpayer inquiries through its phone lines, e-mail accounts, and walk-in centers.

To manage this seasonal variation in demand, the IRS has historically "borrowed" employees, such as revenue officers, tax auditors, and tax attorneys, from other activities for temporary reassignment to customer service work.

In recent years, the IRS's agreement with the national union over these filing-season secondments has authorized local negotiations on the issue; for the 2003 filing season the national agreement preserved then extant local provisions except as modified by a national agreement or local negotiations. On its face, then, the national agreement kept in place for 2003 the memoranda of understanding ("MOUs") negotiated by NTEU Chapters 22, 34, and 60, under which qualified employees who volunteered for customer service duties and were used in that role would receive extra time off. The three agreements provided, in pertinent part, that

> [a]s an incentive for volunteering, all volunteers who are utilized [for seasonal customer-service work] will receive one hour for every forty hours of customer service worked as a Time Off Incentive Award . . . . Volunteers who are selected for full time positions would receive a minimum of 12 hours. In order to receive the 12 hours, full time volunteers must serve in their details for the entire filing season. All other volunteers who are utilized will receive a minimum of 6 hours.

Joint Appendix ("J.A.") 170. The agreement with Chapter 60 was identical except for an additional sentence not material to our decision.

Despite the national agreement allowing such MOUs, the IRS refused to honor the applicable time-off provisions in 2003, arguing that awards under such terms would be contrary to law; it therefore didn't grant time-off awards during the 2003 tax filing season. The IRS rested on 5 U.S.C. § 4502(e),

which (as we said) authorizes agencies to award employees, pursuant to regulations promulgated by the Office of Personnel Management ("OPM"), extra time off "in recognition of superior accomplishment or other personal effort that contributes to the quality, efficiency, or economy of Government operations." OPM regulations, in turn, permit agencies to grant such awards "on the basis of . . . [a] suggestion, invention, superior accomplishment, productivity gain, or other personal effort that contributes to the efficiency, economy, or other improvement of Government operations." 5 C.F.R. § 451.104 (2006).

The IRS claimed that awards called for by the agreements failed to provide the statutorily required contribution "to the quality, efficiency, or economy of Government operations" because of the possibility that volunteers performing less than minimally successful work would be entitled to awards.

The arbitrator rejected the IRS defense, reasoning that in volunteering an IRS employee contributed to the efficiency of government operations by "allowing the IRS to have a willing employee interacting with the public, rather than an employee who was detailed with no desire to be in that position." J.A. 30.

The IRS filed exceptions with the FLRA pursuant to 5 U.S.C. § 7122, and the FLRA set aside the award, reasoning that the arbitrator's decision had required awards even for volunteers whose customer-service work fell below a minimally successful level. Such work would not, it said, contribute to the efficiency, economy or improvement of Government operations. *Nat'l Treasury Employees Union Chapters 22, 34, & 60*, 61 F.L.R.A. No. 33 (2005).

The union filed a timely petition for review.

5

* * *

Under 5 U.S.C § 7123(c), we must set aside a FLRA decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 97 n.7 (1983). We will uphold the Authority's decision "if, but only if, we can discern a reasoned path from the facts and considerations before the [agency] to the decision it reached." *U.S. Information Agency v. FLRA*, 960 F.2d 165, 169 (D.C. Cir. 1992). The FLRA's findings of fact are "conclusive" if supported by substantial evidence on the record, 5 U.S.C. § 7123(c), and its "reasonable inferences" receive deference on review. *American Fed'n of Government Employees, Local 2441 v. FLRA*, 864 F.2d 178, 184 (D.C. Cir. 1988).

As to the MOUs themselves, courts interpret labor agreements in light of the "practice, usage and custom" of the parties. *Transportation-Communication Employees Union v. Union Pac. Ry. Co.*, 385 U.S. 157, 161 (1966). In particular, where the terms of a bargaining agreement are ambiguous, we look to evidence of the parties' contemporaneous understanding. See *Commonwealth Communications, Inc. v. NLRB*, 312 F.3d 465, 468 (D.C. Cir. 2002); *American Postal Workers Union v. U.S. Postal Service*, 940 F.2d 704, 707–08 (D.C. Cir. 1991). We see no reason to suppose that either the arbitrator or the FLRA could disregard those principles of interpretation.

The FLRA opinion rests heavily on the assertion that the arbitrator directed the IRS to award time off without regard to an employee's actual performance and thus potentially in the absence of any contribution to the efficiency, economy or improvement of Government operations. But as FLRA Member Pope recognized in dissent, the arbitrator made no finding whether the agreements contemplated time-off awards

when an employee's performance was less than minimally successful.

Nor do the agreements, on their face, resolve the question of awards to underperforming individuals. The text makes no explicit mention of performance, stating only that "all volunteers who are utilized" will get time off. J.A. 170. Without the words "are utilized," the agreements would perhaps best be understood to require awards for the mere act of volunteering. But the "utilized" phrase may impose a minimum performance threshold; the IRS arguably does not "utilize" non-performing employees. Alternatively, "utilize" might simply refer to an individual's selection for duty by the IRS out of the initial pool of volunteers for customer service work, with no implied performance floor. Although we afford deference to the FLRA's interpretation of union bargaining proposals, *Nat'l Treasury Employees Union v. FLRA*, 30 F.3d 1510, 1514 (D.C. Cir. 1994), here the Authority did not address the MOUs' textual ambiguities or offer any independent interpretation of the agreements.

In fact, the record contains arguably contradictory evidence about the parties' contemporaneous understanding of the MOUs. Lovett, the union representative, testified that the union never expected awards merely for volunteering, but rather for an employee's "raising [his] hand [and] doing the work that was asked of [him] at a fully successful level." Lovett testimony at 140 (Aug. 31, 2004) J.A. 76. Lovett explained that the IRS retained "absolute authority" to remove an underperforming employee from customer service duty and that such removal would "either eliminate or minimize any [time-off] award that they would receive." Lovett testimony at 133 (Sept. 1, 2004) J.A. 124.

But the union's position may be undercut by its rejection of the IRS's negotiating proposal to include an explicit quality

criterion that would have changed the award formula from "one hour for every forty hours of customer service worked" to "one hour for every forty hours [of customer service] *successfully* worked." See Canning testimony at 57–59, 80–81, J.A. 105, 110–11 (emphasis added). An IRS witness recalled that "there was absolutely no conceptual agreement that the performance had to be of a satisfactory nature." *Id*. at 80, J.A. 110.

Another IRS witness testified that in the event of a volunteer's serious underperformance, such as falling asleep on the job, the IRS's "practice was to let the employee know and also let the union know that this person was falling asleep at the desk and we can't have that." Wolfson testimony at 34-35, J.A. 99. There was evidence that those managing filing season employees in fact held expectations that volunteers would really work. *Id.* at 36, J.A. 99. But the record provides nothing more specific on whether underperforming employees ever actually claimed or received awards.

In our view, the Authority's failure to address the MOUs' textual ambiguities and the arguably conflicting evidence as to the parties' contemporaneous understanding or subsequent practices renders its decision arbitrary and capricious. We therefore vacate and remand for further proceedings consistent with this opinion; given the deference we owe the Authority on factual matters, we are not in a position to resolve factual disputes or to decide whether the evidence can in fact be reconciled (insofar as it controls the outcome).

*So ordered.*