# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 13, 2014           Decided May 16, 2014

No. 12-1463

BROADCASTING BOARD OF GOVERNORS OFFICE OF CUBA
BROADCASTING,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL
1812,
INTERVENOR

———

On Petition for Review of a Final Decision
of the Federal Labor Relations Authority

———

*Howard S. Scher*, Attorney, U.S. Department of Justice, argued the cause for petitioner. With him on the briefs were *Stuart F. Delery*, Assistant Attorney General, and *Leonard Schaitman*, Attorney.

*Zachary R. Henige*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. On the brief was *Rosa M. Koppel*, Solicitor.

*Leisha A. Self* argued the cause for intervenor. With her on the brief was *David A. Borer*.

Before: GARLAND, *Chief Judge*, and TATEL and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Compared to the charges of cronyism, waste, and mismanagement that dominated this dispute in its earlier stages, the legal issue we confront is quite tame. After an arbitrator found that Petitioner Broadcasting Board of Governors violated both a collective bargaining agreement and federal labor relations law when it laid off sixteen employees, the Federal Labor Relations Authority upheld the arbitrator's determination. The Board of Governors now petitions for review. Because Congress has barred the courts from hearing challenges to FLRA orders that "involve[] an award by an arbitrator[], unless the order involves an unfair labor practice," 5 U.S.C. § 7123(a), we must determine whether the order at issue here, which undoubtedly involves an award by an arbitrator, also involves an unfair labor practice. Finding that it does not, we dismiss the petition for lack of subject matter jurisdiction.

## I.

The Office of Cuba Broadcasting, a division of Petitioner Broadcasting Board of Governors, produces radio and television programming for dissemination inside Cuba. This programming runs the gamut from breaking news to in-depth pro-democracy documentaries to the Major League Baseball playoffs. There's just one problem. For as long as the Office has been broadcasting to Cuba, the Cuban government has engaged in a massive signal-blocking campaign. In response, the Office has

sought innovative ways to sneak its content through. For example, in order to maximize the strength of its signal, the Office has broadcast from an airplane flying as close to Cuba as possible.

So who's winning—the Office or the Cuban government? Depends on whom you ask. Citing statistics suggesting high levels of online engagement, the Office's supporters insist that its programming has become an invaluable resource for Cubans otherwise cut off from reliable news and information. *See* Broadcasting Board of Governors, *Radio and TV Marti*, http://www.bbg.gov/broadcasters/ocb/ (last viewed May 5, 2014). By contrast, critics frequently cite Government Accountability Office studies suggesting that the blocking campaign has prevented virtually all Cubans from watching or listening to any of the Office's programs. *See, e.g.*, U.S. Gov't Accountability Office, *Broadcasting to Cuba: Actions Are Needed to Improve Strategy and Operations* 3 (2009); *see also* U.S. Gov't Accountability Office, *Broadcasting Board of Governors Should Provide Additional Information to Congress Regarding Broadcasting to Cuba* 11 (2011) (noting difficulties estimating audience size); *cf. also* Editorial, *A New Voice of America*, WALL ST. J., May 6, 2014, http://online.wsj.com/news/articles/SB10001424052702304831 304579545870588304300 (endorsing congressional efforts to reform the "U.S. international-broadcasting system").

In 2009, members of Congress critical of the Cuba broadcasting program proposed reducing the Office's budget by almost half—over $16 million. After program advocates complained, Congress settled on a $4.2 million cut, anticipating that the Office could find the necessary savings by scrapping its expensive airplane program and reforming its contracting procedures. *See* American Federation of Government

Employees, Local 1812 v. Broadcasting Board of Governors, 74–75 & n.39 (Nov. 19 2011) (Butler, Arb.) ("Arbitration Award").

Instead of grounding the plane and reforming its procedures, however, the Office announced a "reduction-in-force"—in other words, layoffs. According to the Office, this would save money without sacrificing program quality. But the union representing the affected employees, the American Federation of Government Employees, Local 1812, objected, claiming that the layoffs were unjustified. And even assuming the layoffs were justified, the Union insisted that the Office had an obligation under both the collective bargaining agreement and sections 7116(a)(5) and (a)(8) of the Federal Service Labor-Management Relations Statute (the Statute), 5 U.S.C. § 7101 *et seq.*, to engage in so-called impact and implementation bargaining over how it would carry them out, *see* 5 U.S.C. § 7116(a) ("[I]t shall be an unfair labor practice for any agency . . . to refuse to consult or negotiate in good faith with a labor organization as required by this chapter; . . . [or] otherwise fail or refuse to comply with any provision of this chapter."). After an extensive back-and-forth between the Union and management, the Office decided to proceed as planned, ultimately terminating sixteen employees.

Believing that the Office had carried out unjustified layoffs in an impermissible manner, the Union initiated formal proceedings under the Federal Service Labor-Management Relations Statute. The Statute "contains a two-track system for resolving labor disputes." *Ass'n of Civilian Technicians, N.Y. State Council v. FLRA*, 507 F.3d 697, 699 (D.C. Cir. 2007) (*ACT*) (internal quotation marks omitted). "Under the first track . . . , a party may file an unfair labor practice charge with the [FLRA's] General Counsel, who will investigate and issue a complaint, if warranted. The matter is then adjudicated by the

[FLRA],” and the FLRA's order is then fully reviewable by this Court. *Id.* (internal citations omitted). “Under the second track . . . , a party may file a grievance in accordance with its collective bargaining agreement. . . . The grievance is subject to binding arbitration, and the arbitral award is subject to review by the [FLRA].” *Id.* (internal citations omitted). In this case, the Union pursued the second track, filing a formal grievance and then taking the Office's parent agency, the Broadcasting Board of Governors, to binding arbitration.

After considering extensive evidence regarding, among other things, the background of the layoffs and the intent of the parties to the collective bargaining agreement, the arbitrator sided with the Union. In a comprehensive and blistering opinion, the arbitrator dismissed the Board's justifications for the reduction-in-force, determining that the layoffs were in fact part of the then-Office director's “bad faith plan to at least intimidate, if not actually get rid of, his internal critics.” Arbitration Award at 76. As for the methods by which the Office had carried out the layoffs, the arbitrator examined the text of the collective bargaining agreement, the intent of the negotiators, and the way in which layoffs had been implemented in the past, concluding that the Office had violated the agreement by failing to engage in impact and implementation bargaining. *Id.* at 61, 67–68. Moreover, the arbitrator agreed with the Union that by failing to engage in such bargaining, the Office had committed a statutory unfair labor practice. *See id.* at 94. In doing so, the arbitrator expressly rejected the Board's invocation of the “covered by” defense, under which parties have no statutory obligation to negotiate over an issue that the collective bargaining agreement already addresses with sufficient particularity. Arbitration Award at 64; *see also id.* at 58 (explaining that the “covered by” defense applies only to statutory duties, not contractual duties); *Federal Bureau of*

*Prisons v. FLRA*, 654 F.3d 91, 94–95 (D.C. Cir. 2011) (describing the defense). The arbitrator then went on to find that the Office had breached the collective bargaining agreement in several additional ways, including by failing to give affected employees "priority consideration" for certain vacant positions. Arbitration Award at 79–80. In the end, these contractual and statutory violations combined with management's bad faith conduct led the arbitrator to award the Union a "status quo ante" remedy, requiring that all terminated employees be reinstated and paid damages. *Id.* at 94.

Appealing to the FLRA, the Board of Governors argued that the arbitrator had improperly rejected its "covered by" defense. According to the Board, "the covered-by doctrine relieves an agency from its obligation to bargain over a matter if that matter is contained in an agreement or that matter is inseparably bound up with a subject expressly covered by an agreement." *See* Broadcasting Board of Governors Office of Cuba Broadcasting, 66 FLRA 1012, 1014 (2012) ("FLRA Order"). As a result, the Board argued, it had no statutory or contractual obligation to engage in impact and implementation bargaining over the layoffs. The FLRA rejected this argument, reasoning that the "covered by" defense applies only to statutory duties, not contractual duties, and that the arbitrator's award could rest equally well on contractual or statutory grounds. In a footnote central to the issue before us, the FLRA explained that it had no need to address the merits of the Union's statutory unfair labor practice claims or the Board's "covered by" defense:

> The Agency also argues that the Arbitrator's interpretation of Article 3 and Article 30, Section 2 is contrary to law because it is inconsistent with the covered-by doctrine. Although the Arbitrator stated that the Agency violated the Statute, it is unnecessary to address the Agency's exception. The Arbitrator's

contractual interpretation of these provisions of the parties' agreement serves as a separate and independent basis for the award, and the Agency has not established that this basis is deficient. Thus, we need not address any claims regarding an alleged statutory violation. *See, e.g.*, *Broad. Bd. of Governors*, 66 FLRA 380, 385-86 (2011) (Member Beck dissenting) (finding it unnecessary to address contrary-to-law exceptions because party did not establish that arbitrator's contract interpretation, which was a separate and independent basis for the award, was deficient).

*Id.* at 1019 n.5 (internal quotation marks and citations omitted). After rejecting every one of the Board's contractual arguments, the FLRA upheld the status quo ante remedy. *Id.* at 1020–21.

The Board of Governors now petitions for review. Before addressing the merits of the Board's arguments, however, we must determine whether we have subject matter jurisdiction. *See Department of the Navy v. FLRA*, 665 F.3d 1339, 1344 (D.C. Cir. 2012).

## II.

Lying at the heart of this case is a fundamental principle of federal labor relations law: arbitration awards are presumed final and not subject to judicial review. Reflecting this principle, the Statute prohibits courts from reviewing an FLRA order "involving an award by an arbitrator, unless the order involves an unfair labor practice." 5 U.S.C. § 7123(a). "Insulating arbitration awards from judicial review reflects a strong Congressional policy favoring arbitration of labor disputes and furthers Congress's interest in providing arbitration results substantial finality." *Department of the Navy*, 665 F.3d at 1344 (internal quotation marks omitted). The "limited exception that

8

allows . . . judicial review . . . furthers Congress's other stated interest of ensuring a single, uniform body of case law concerning unfair labor practices." *ACT*, 507 F.3d at 699 (internal quotation marks omitted). Thus, for this Court to have subject matter jurisdiction over the Board's petition, the order under review must "involve[]" a statutory unfair labor practice.

The word "involves" is far from precise. Simplifying our task, this Court has addressed the word's scope in a series of decisions, all of which faithfully respect Congress's desire to limit judicial review of arbitration awards. We first considered the meaning of "involves" in *Overseas Education Association v. FLRA*, 824 F.2d 61 (D.C. Cir. 1987), in which we held that "a statutory unfair labor practice [must] actually be implicated to some extent in the [FLRA's] order," so even if certain conduct is "*capable* of characterization as a statutory unfair practice . . . [,] the conduct must actually be so characterized and the claim pursued, by whatever route, as a statutory unfair labor practice, not as something else." *Id.* at 66. Not only that, but in *American Federation of Government Employees, Local 2510 v. FRLA*, 453 F.3d 500 (D.C. Cir. 2006) (*AFGE*), we emphasized that even when an aggrieved party argues that the other party committed a statutory unfair labor practice, and even when the arbitrator's award addresses that alleged unfair labor practice, "it is the order of the [FLRA] that is the subject of the petition for judicial review," not the arbitrator's decision or the initial grievance. *Id.* at 504. That order, moreover, must do more than merely acknowledge an unfair labor practice. As we made clear in *Department of the Interior v. FLRA*, 26 F.3d 179 (D.C. Cir. 1994), a "passing reference does not satisfy the requirement that an unfair labor practice be an explicit ground for or necessarily implicated by the [FLRA's] decision." *Id.* at 184 (internal quotation marks omitted). We thus concluded that we lack jurisdiction where, as in that case, the FLRA describes an unfair

labor practice claim solely to "*reject* the notion that an unfair labor practice is any part of the case before [it]." *Id*. Reinforcing this requirement, we held in *ACT*, 507 F.3d 697 (D.C. Cir. 2007), that the order must "contain a substantive discussion of an unfair labor practice claim," *id.* at 700—though we later clarified in *Department of the Navy v. FLRA*, 665 F.3d 1339 (D.C. Cir. 2012), that the discussion need not be "explicit," *id.* at 1345 (holding that when an FLRA order "necessarily implicates a statutory unfair labor practice," we have jurisdiction even if the order never "explicitly discuss[es]" the unfair labor practice).

These decisions strongly suggest that we lack subject matter jurisdiction in this case. True, as the Board points out, the Union alleged and the arbitrator found a statutory unfair labor practice. But under *AFGE* what matters is the FLRA's final order—not the arbitrator's award or the initial grievance—and in that order the FLRA mentioned the Union's unfair labor practice claim only in a footnote and only to explain why it had no need to consider the claim. As we made clear in *Department of the Interior*, the FLRA must do more than simply note the existence of an unfair labor practice claim for its order to "involve" an unfair labor practice—indeed, even explaining why it will not address an unfair labor practice argument is insufficient. The FLRA's order must, as we held in *ACT*, reach and discuss the merits of a statutory unfair labor practice or in some "other way affect[] substantive law regarding" a statutory issue, something the order in this case never does. 507 F.3d at 700.

Seeking to escape the clear dictate of our precedent, the Board of Governors makes two arguments. First, it contends that the FLRA's order "involves an unfair labor practice" by virtue of the Board's invocation of the "covered by" defense, "a statutory defense, [which] as such involves—or at least implicates—the question of a statutory duty to bargain."

Petitioner's Br. 41. Although the FLRA maintains that the "covered by" defense applies only to statutory duties, the Board of Governors insists that the defense applies as well to at least some contractual duties, including the one the arbitrator found here. According to the Board, the arbitrator's consideration of extrinsic evidence reveals that the arbitrator looked beyond the text of the collective bargaining agreement when defining the scope of the Board's contractual duty to bargain, something the arbitrator could not have done without first rejecting the Board's statutory "covered by" defense—in other words, determining that the agreement itself fails to "cover" the impact and implementation of layoffs sufficiently to relieve the Board of any further bargaining obligation. Because, at least in this case, a "contractual duty to bargain is *not* independent of a statutory duty to bargain," *id.* at 42, the Board urges us to take jurisdiction on the ground that the FLRA had no basis for upholding the arbitrator's decision without at least implicitly rejecting the Board's statutory "covered by" defense. In support, the Board relies on our recent opinion in *Federal Bureau of Prisons v. FLRA*, 654 F.3d 91 (D.C. Cir. 2011), claiming that it stands for the proposition that contractual and statutory duties are neither separate nor independent. Thus, according to the Board, the collective bargaining agreement could provide no "separate and independent" basis for the arbitrator's award.

Had the FLRA necessarily rejected the "covered by" defense when it upheld the arbitrator's award, we might well agree that we have subject matter jurisdiction. *See Department of the Navy*, 665 F.3d at 1345 (taking jurisdiction where the FLRA's order necessarily found an unfair labor practice, even though the FLRA had ostensibly found only a contractual duty). But as the FLRA explains, the Board of Governors's argument misconstrues the "covered by" defense, which applies only to statutory duties. Simply put, the "covered by" defense respects

the bargain the parties struck: if the agreement covers an issue in sufficient depth, then we assume the parties have already fully negotiated over that issue and therefore refrain from imposing additional statutory obligations that appear nowhere in the agreement. *See Federal Bureau of Prisons*, 654 F.3d at 94 ("If a collective bargaining agreement 'covers' a particular subject, then the parties to that agreement are absolved of any further duty to bargain about that matter during the term of the agreement.") (citations and quotation marks omitted). It would make little sense to consider such a defense when evaluating a purported contractual duty, since contractual duties are themselves products of the very bargaining the "covered by" defense is designed to respect. And given that extrinsic evidence of the mutual intent of the parties furnishes an appropriate source of insight into the meaning of contractual terms, an arbitrator's consideration of such evidence hardly transforms the contractual inquiry into a statutory one, opening the door to a "covered by" defense. *See* RESTATEMENT (SECOND) OF CONTRACTS § 214 (1981); *see also National Treasury Employees Union v. FLRA*, 466 F.3d 1079, 1081 (D.C. Cir. 2006) ("[C]ourts interpret labor agreements in light of the practice, usage and custom of the parties. In particular, where the terms of a bargaining agreement are ambiguous, we look to evidence of the parties' contemporaneous understanding." (internal citations and quotation marks omitted)).

*Federal Bureau of Prisons* is not to the contrary. There, unlike here, we clearly had jurisdiction because the FLRA had explicitly addressed and found a statutory unfair labor practice. 654 F.3d at 454; *see also ACT*, 507 F.3d 699 (noting that where an unfair labor practice is explicitly discussed in the FLRA's order, our jurisdiction is clear). Nor does that decision provide any support for the Board's argument that the "covered by" defense applies to contractual duties. To be sure, after rejecting a

statutory unfair labor practice claim on the ground that a particular issue was "covered by" the collective bargaining agreement, we went on to "reject . . . the contention" that the collective bargaining agreement provided a "'separate and independent basis' for the arbitral award." *Federal Bureau of Prisons*, 654 F.3d at 97. We did so, however, not because the "covered by" defense applies to contractual duties, as the Board contends, but rather "because the arbitral award ma[de] no distinction between the purportedly 'separate' statutory and contractual grounds." *Id.* Since under these circumstances the Bureau of Prisons "was not required to file a separate exception" outlining contractual arguments, the FLRA had no basis for holding that the Bureau's failure to file such an exception waived all such arguments. *Id.* Here, the FLRA's "separate and independent basis" holding suffers from no similar defect: the arbitrator found *both* a statutory *and* a contractual duty, and the Board of Governors made both statutory and contractual arguments before the FLRA. Accordingly, given Board counsel's refreshingly candid concession that he knows of no cases where either the FLRA or any court has found a "covered by" defense relevant to the scope of a contractual duty, Oral Arg. Rec. 2:05–:30, we decline the Board's invitation to do so here.

Second, the Board of Governors argues that we have subject matter jurisdiction because the FLRA's order might implicate sovereign immunity. Recall that the arbitrator interpreted the collective bargaining agreement as requiring the Board to provide employees affected by the layoffs with "priority consideration" for certain vacant positions. *See* Arbitration Award at 79–80. This requirement, the Board argues, forces it to violate a government-wide Office of Personnel Management regulation barring agencies from "assign[ing] an employee in an excepted position to a position in the competitive service," 5 C.F.R. § 351.705(b)(6), even though the Statute prohibits

agencies from entering into agreements "inconsistent with any Federal law or any Government-wide rule or regulation," 5 U.S.C. § 7117(a)(1). Thus, the Board maintains, the FLRA's order "would require management officials to violate the law, implicating principles of sovereign immunity and giving this Court jurisdiction to review such questions." Petitioner's Br. 42–43. Again, we disagree.

Even assuming that we always have jurisdiction to review FLRA orders that implicate principles of sovereign immunity, the order at issue here does no such thing. After all, as the FLRA clearly explained, "priority consideration" and "assignment" are separate concepts—an agency might provide a candidate "priority consideration" for a particular position yet ultimately refuse to "assign" the candidate to that position because she proved ineligible. *See* FLRA Order at 1017. Since the order before us mandates only "priority consideration," management officials can follow it without violating government-wide regulations. *See* Reply Br. 16 (conceding that the order would be "unobjectionable" if it mandated only "consideration" rather than "assignment").

## III.

Lacking subject matter jurisdiction, we dismiss the petition for review.

*So ordered.*