# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 23, 2006          Decided June 27, 2006

No. 05-1123

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
LOCAL 2510,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of an Order of the
Federal Labor Relations Authority

———

*Stuart A. Kirsch* argued the cause for petitioner. With him on the briefs was *Mark D. Roth*.

*William E. Persina*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief was *William R. Tobey*, Acting Solicitor. *James F. Blandford*, Attorney, entered an appearance.

Before: GINSBURG, *Chief Judge*, and ROGERS, *Circuit Judge,* and EDWARDS, *Senior Circuit Judge*.

GINSBURG, *Chief Judge*: Local 2510 of the American Federation of Government Employees petitions for review of an order of the Federal Labor Relations Authority reducing the

attorney's fee an arbitrator awarded the Union for representing a member in a grievance arbitration. We do not have jurisdiction to review a final order of the Authority "involving an award by an arbitrator" unless "the order involves an unfair labor practice under section [7116]" of Title V,[*] 5 U.S.C. § 7123(a)(1), as the Union argues this order does. In the alternative the Union argues we have jurisdiction pursuant to *Leedom v. Kyne,* 358 U.S. 184 (1958). We reject the first argument because the Authority's order addresses only the attorney's fee, and therefore does not involve an unfair labor practice; we reject the second argument because *Leedom v. Kyne* implicates the jurisdiction of the district court, not that of the court of appeals. Therefore, we dismiss the Union's petition for lack of jurisdiction.

## I. Background

William Roach, an accounting technician for the Defense Finance and Accounting Service (DFAS) of the United States Department of Defense and president of Local 2510, was suspended on the grounds that, by failing to return promptly to work after attending an out-of-town union meeting, he had been absent (for four hours) without leave and, in a conversation with his supervisor regarding his absence, had shown a "lack of candor." The Union filed a grievance on behalf of Mr. Roach, challenging the suspension and, when the grievance was denied, took the matter to arbitration. The arbitrator described the grievance as follows:

[A] union grievance was filed protesting Roach's

---

[*]Although the statute refers to "section 7118," the reference "has been recognized to be an error; the correct reference is to section 7116." *Overseas Educ. Ass'n v. FLRA,* 824 F.2d 61, 63 n.2 (D.C. Cir. 1987) (*OEA*).

suspension; the action barring him from the Charleston Operating Location and management's refusal to furnish requested information as required by 5 U.S.C. § 7114(b)(4) and Article 4 of the master agreement .... Management's conduct was protested as a separate unfair labor practice as well as a contract grievance.

The arbitrator held the discipline was imposed without just cause and ordered the DFAS to rescind the suspension and give Roach back pay. He also ordered the DFAS to "cease and desist" from two practices he held were violations both of law and of the collective bargaining agreement between the Union and the DFAS. First, the arbitrator held the employer's refusal to permit Roach "access to the facility to perform union duties during the time he was serving his suspension" was an unfair labor practice within the meaning of 5 U.S.C. § 7116 and a violation of 5 U.S.C. § 7102 (right to assist labor organization). Second, he held the employer's refusal to provide the Union with certain information and documents the Union needed in order to assess the strength of Roach's grievance was also a violation of § 7102, Article 4 of the master labor agreement, and of 5 U.S.C. § 7114(b)(4) (duty to furnish data maintained by the agency).

In a later opinion, the arbitrator concluded the Union was entitled to reimbursement of its attorney's fee pursuant to the Back Pay Act, 5 U.S.C. § 5596. He awarded a fee of $74,700, at a rate of $225 per hour for 332 hours of work, and $1,978.48 in expenses.

The DFAS filed with the Authority various exceptions to the fee award but did not challenge the arbitrator's decision on the merits. *See id.* § 7122. The employer argued: (1) the arbitrator lacked authority under the collective bargaining agreement to award fees; (2) the fee awarded was unreasonable;

(3) the award was not in the interest of justice; and (4) the award was not supported by a reasoned decision.

The Authority rejected the first exception because the DFAS had not raised the argument before the arbitrator; it rejected the third and fourth exceptions on their merits. The Authority agreed the fee award was excessive, however, and it reduced by more than half the number of compensable hours (to 148.5) and hence the amount of the award (to $33,412.50). Specifically, the Authority reduced the number of hours for research and preparation of a brief to 31 from the 77 claimed, on the ground that the hours claimed were excessive in light of the attorney's "extensive experience in labor and employment law"; reduced the number of hours for the "preparation of time charges and calculating fees" to nine from the 31 claimed because that work was "mostly clerical"; and discounted the remaining hours by 25% "to account for a failure to exercise billing judgment" and by another 25% because the fee award was "significantly disproportionate to the amount [of money] involved in the case." When the Authority denied its request for reconsideration, the Union petitioned for review in this court.

## II. Analysis

We do not have jurisdiction to review an order of the Authority reviewing the decision of an arbitrator unless the order of the Authority "involves an unfair labor practice." 5 U.S.C. § 7123(a)(1). In this case the order of the Authority deals only with the issue of the union attorney's fee. The Union raises two arguments in an attempt to overcome the jurisdictional bar to our review of such an order.

A. The Statutory Exception

First the Union argues we have jurisdiction because the

Authority's order "involves an unfair labor practice" within the meaning of § 7123(a)(1). As we explained in *OEA*, the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, establishes a "two-track system for resolving labor disputes." 824 F.2d at 62. A party aggrieved by an unfair labor practice may go down either track but not both. 5 U.S.C. § 7116(d). A party starts down the first track by filing an unfair labor practice charge with the Authority. *Id.* § 7118(a). If the General Counsel issues a complaint, then the Authority will adjudicate the matter, and its decision will be subject to judicial review. *Id.* § 7123(a). A party starts down the second track, as did the Union in this case, by filing a grievance and pursuing it through the procedures provided in the collective bargaining agreement between the employer and the union. *Id.* § 7121(a)(1). If the grievance is denied, then the union may seek binding arbitration. *Id.* § 7121(b)(1)(C)(iii). If either party is dissatisfied with the decision of the arbitrator, then it may file exceptions thereto with the Authority. *Id.* § 7122. Judicial review of the Authority's decision, however, is foreclosed unless its order "involves an unfair labor practice." *Id.* § 7123(a)(1).

We explicated the meaning of the just-quoted standard in *OEA*. There we observed, "An [Authority] holding that there was (or was not) a statutory unfair labor practice committed in a particular case would obviously satisfy this somewhat amorphous standard, but something short of a paradigm case may also sufficiently 'involve' a statutory unfair labor practice to confer jurisdiction." *OEA*, 824 F.2d at 65. That the standard is amorphous, however, does not mean it is met in every case. A mere "passing reference" to an unfair labor practice will not suffice. *See U.S. Dep't of the Interior v. FLRA*, 26 F.3d 179, 184 (D.C. Cir. 1994) (*DOI*). The unfair labor practice "must be either an explicit ground for, or be necessarily implicated by, the Authority's decision." *OEA*, 824 F.2d at 68.

In the order now before us the Authority addressed only the fee award, but the Union contends the order is nonetheless reviewable because the arbitrator's "principal award," meaning his award on the merits of the grievance, "is replete with findings of statutory [unfair labor practices]" and there are "repeated references to these findings in the [Authority's] decision." Actually, the arbitrator found only one unfair labor practice in his decision on the merits, namely, the employer's refusal to permit Roach access to the DFAS facility. That other statutory violations or violations of the collective bargaining agreement *"could be* characterized as ... statutory unfair labor practice[s] will not suffice" to make the order reviewable. *Id.* at 67; *see* 5 U.S.C. § 7116(a)(8) (unfair labor practice for agency to "fail or refuse to comply with any provision of" Statute). But more to the point, it is not the arbitrator's award on the merits of the grievance that must involve an unfair labor practice as the predicate for judicial review; it is the order of the Authority that is the subject of the petition for judicial review -- in this case the Authority's order reviewing the arbitrator's fee award -- that must involve an unfair labor practice. *See* 5 U.S.C. § 7123(a). In the latter order, there is neither a single mention of § 7116 (unfair labor practices) nor any discussion of the arbitrator's finding of an unfair labor practice other than passing references when the Authority recounts the issues presented in this "fairly straightforward case." As we have said before, a "passing reference does not satisfy the requirement" that the order involve an unfair labor practice. *DOI*, 26 F.3d at 184.

The Union also suggests the order involves an unfair labor practice because the Authority must have considered the arbitrator's holding that the employer had engaged in an unfair labor practice when the Authority approved the arbitrator's finding that the DFAS knew or should have known it would not prevail on the merits, which finding was the basis for its holding that an award of the attorney's fee was in the interest of justice.

Both the Authority and the arbitrator, however, considered the likelihood the DFAS would not prevail only with respect to issues resolved under the collective bargaining agreement between the union and the employer, namely, the validity of Roach's discipline for being absent without leave and for a lack of candor. Neither the arbitrator nor the Authority considered whether the DFAS should have known it would be unable to defend its having denied Roach access to its facility, which is what the arbitrator held was an unfair labor practice. If the Authority in the order under review had considered whether the DFAS should have known it would not prevail with respect to the only unfair labor practice the arbitrator found, then perhaps the order would have "involved" an unfair labor practice, but that is not what happened. In the order under review, there was no discussion at all of the arbitrator's finding of an unfair labor practice in his earlier decision on the merits of the Union's grievance.

The Union's most promising, but ultimately unpersuasive, argument is that an unfair labor practice was "necessarily implicated" in the Authority's decision, *OEA*, 824 F.2d at 68, because it would have been "impossible for the [Authority] to review the reasonableness of the fee determination, without analyzing the research, briefing, and presentation of [the unfair labor practice] issues" raised in the grievance. As the Union acknowledged at oral argument, by this logic we would always have jurisdiction to review an order of the Authority reviewing an arbitrator's award of attorneys' fees if the underlying dispute involved an unfair labor practice. As explained below, we cannot read the exception to the jurisdictional bar so broadly.

Although the Statute does not expressly tell us "how broadly 'involves [an unfair labor practice]' should be construed," *id.* at 65, we are guided by the rationale for this exception to the otherwise absolute bar to judicial review in §

7123(a)(1). The exception functions, as the Authority persuasively explains, to insure uniformity in the case law concerning unfair labor practices. By making reviewable every order involving an unfair labor practice claim, whether it arises from a complaint issued by the General Counsel or from a dispute submitted to an arbitrator, the Congress made certain there would be a single, uniform body of case law concerning unfair labor practices.

We see no plausible rationale for the alternative rule implicitly advanced by the Union, namely, that our review extends to any order in a case in which an unfair labor practice was involved -- regardless whether the unfair labor practice is involved in the particular order of which review is sought. We have previously acknowledged that an order may be reviewable even if the Authority did not therein address an unfair labor practice "on the merits," *OEA*, 824 F.2d at 71, but we cautioned at the same time that to be reviewable the substance of the unfair labor practice must at least "be discussed in some way in, or be some part of, the Authority's order." *Id.* at 65. Without even that much involvement there is no risk the Authority will leave the path of the law of unfair labor practices and yet escape the review that would bring it back to the straight and narrow. Where there is no such risk, neither is there any reason for the Congress to have departed from its established policy "favoring arbitration of labor disputes and accordingly granting arbitration results substantial finality," which policy underlies the general rule in § 7123 barring judicial review of arbitral awards. *Id.* at 63.

Thus, in *OEA* we held an order did involve an unfair labor practice because the Authority had reviewed an arbitrator's decision that arbitration was precluded by a previous unfair labor practice charge. *Id.* at 71. The Authority did not address the unfair labor practice on the merits but it did more than

simply refer to the finding; it was required "to make a detailed assessment of the precise nature of a statutory unfair labor practice charge, and then to compare the substance of that charge with the substance of the grievance before the arbitrator" prior to concluding the two claims were identical. *Id.* at 71.

Here, in contrast, the Authority did not engage at all with the substance of the unfair labor practice. The Authority considered only whether the hours charged by the union attorney were reasonable, taking into account both his experience and the relatively uncomplicated nature of the case. Because the Authority's decision has no bearing upon the law of unfair labor practices, its order does not "involve[] an unfair labor practice," 5 U.S.C. § 7123(a)(1), and is not judicially reviewable.

Contrary to the position the Government took at oral argument, our decision should not be read to establish a simplistic rule barring review of an order that deals solely with a fee award while allowing review of an order in which the Authority addresses both an unfair labor practice and a fee issue. In the latter case, the rationale for review of the order would obtain to the extent, and only to the extent, the unfair labor practice was involved.

B. The *Leedom* Exception

The Union also argues we should exercise jurisdiction pursuant to *Leedom v. Kyne*, in which the Supreme Court held a district court may, in what we have called "exceptional circumstances," *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1500 (1984), review the decision of an agency even in the face of a statutory provision that precludes judicial review. 358 U.S. 184. More particularly, the agency's alleged conduct must be "contrary to a specific [statutory] prohibition" that is both "clear and mandatory," *id.* at 188, and the party aggrieved must

have no other "meaningful and adequate means of vindicating its statutory rights," *Bd. of Governors, Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).

The Union's argument from *Leedom v. Kyne* comes too late. A dozen years ago we rejected the suggestion that *Leedom v. Kyne* authorizes the court of appeals to enforce a clear statutory prohibition in the first instance. "The *Leedom* exception," we explained, "is premised on the *original* federal subject matter jurisdiction of the district courts. Even if *Leedom* did apply to the [Authority's alleged] actions, it would therefore not confer jurisdiction upon us to hear the case." *U.S. Dep't of the Treasury v. FLRA*, 43 F.3d 682, 688 n.6 (D.C. Cir. 1994) (citation omitted).

*National Ass'n of Government Employees, Local R5-136 v. FLRA*, No. 03-1230, 2003 U.S. App. LEXIS 25934, at *1-2 (D.C. Cir. Dec. 19, 2003), and *American Federation of Government Employees, Local 2986 v. FLRA*, 130 F.3d 450, 451 (D.C. Cir. 1997), are not precedents to the contrary. There we examined whether the Authority had violated a clear and mandatory statutory prohibition but we did not consider our jurisdiction to do so. And, as the Supreme Court has "repeatedly held[,] ... the existence of unaddressed jurisdictional defects has no precedential effect." *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996). Therefore, neither *Leedom v. Kyne* nor its progeny support jurisdiction in this court to consider the present petition.

III. Conclusion

For the foregoing reasons, the petition for review is

*Dismissed.*