# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 24, 2007       Decided October 26, 2007

No. 06-1354

ASSOCIATION OF CIVILIAN TECHNICIANS, NEW YORK STATE
COUNCIL,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of an Order of the
Federal Labor Relations Authority

———

*Daniel M. Schember* argued the cause and filed the briefs
for petitioner.

*James F. Blandford*, Attorney, Federal Labor Relations
Authority, argued the cause for respondent. With him on the
brief was *William R. Tobey*, Deputy Solicitor.

Before: SENTELLE, TATEL and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

Dissenting opinion filed by *Circuit Judge* TATEL.

SENTELLE, *Circuit Judge*: The Association of Civilian Technicians, New York State Council ("the Union" or "the Association"), petitions for review of an order of the Federal Labor Relations Authority stemming from a grievance filed by the Union after the New York Division of Military and Naval Affairs implemented a state-wide smoking ban at its facilities. The parties could not resolve the grievance, so the Union submitted it to binding arbitration in accordance with the terms of its collective bargaining agreement and the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.* The arbitrator denied the grievance and the Union filed exceptions to her award with the Authority. The Authority denied the exceptions in the order at issue here. Because we find that we lack jurisdiction to review the Authority's order, we dismiss.

## I.  Background

In 2003, New York amended its Clean Indoor Air Act to prohibit indoor smoking in all "places of employment," including workplaces of "the legislative, executive and judicial branches of state government and any political subdivision of the state." N.Y. Pub. Health Law § 1399-o(1), -n(2). Accordingly, the New York Division of Military and Naval Affairs ("DMNA") issued a new smoking policy that prohibited all smoking in National Guard facilities in New York.

The Association of Civilian Technicians, New York State Council, which represents the civil technicians working at the Guard facilities, filed a grievance charging that the DMNA had violated their collective bargaining agreement by failing to negotiate the terms of the new smoking policy. When the grievance was not resolved, the Union invoked its right to binding arbitration and added an allegation that DMNA's unilateral implementation of the policy constituted an unfair

labor practice because it was taken in clear and patent breach of the collective bargaining agreement's negotiation provisions.

The parties were unable to stipulate to the issues before the arbitrator. She reviewed their proposed issues and found that, "[a]t the heart of this case is a dispute over the interpretation and application of the language of the Parties' Collective Bargaining Agreement." She then framed the issues as "Did the Agency violate the Collective Bargaining Agreement when it issued a new smoking policy letter on 23 July 2003?" and "If so, what should the remedy be?" She concluded that the DMNA had not violated the collective bargaining agreement because the smoking ban was a statutory requirement and therefore did not fall within the agreement's requirement that rules "within the purview" of the DMNA be negotiated.

The Union filed exceptions to the arbitral decision with the Federal Labor Relations Authority arguing, in pertinent part, that the arbitrator exceeded her authority when she failed to address its unfair labor practice allegations. The Authority denied the Union's exceptions, finding that the arbitrator had not erred in framing the issues as arising solely under the collective bargaining agreement. Under Authority precedent, where parties do not stipulate to the issues before the arbitrator, the arbitrator has broad discretion to frame the issues. *Ass'n of Civilian Technicians, N.Y. State Council*, 60 F.L.R.A. 890 (2005), *recons. denied*, 61 F.L.R.A. No. 134 (2006) (citing *AFGE, Local 1367*, 60 F.L.R.A. 187, 190 (2004)). Therefore, in this case, because there was no stipulation that an unfair labor practice claim was before the arbitrator, the arbitrator was not obligated to frame the issues as including an unfair labor practice claim. *Id.* The Authority deferred to the arbitrator's framing of the issues and dismissed all exceptions to her award. *Id.* The Union sought reconsideration, which was denied, then petitioned for review by this Court.

4

## II. Analysis

We lack jurisdiction to review the Authority's order affirming the arbitral decision because it does not "involve[] an unfair labor practice under section 711[6]" of the Federal Service Labor-Management Relations Statute. 5 U.S.C. § 7123(a)(1).[*] The Authority's order instead involves rules applicable to arbitration which, when applied in this dispute, resulted in the unfair labor practice claim's exclusion from review. We find that this secondary effect on the unfair labor practice claim is not sufficient to qualify the order as one that "involves an unfair labor practice" for purposes of 5 U.S.C. § 7123(a)(1).

The Federal Service Labor-Management Relations Statute limits our review to orders of the Authority which involve unfair labor practices in order to balance a "strong Congressional policy favoring arbitration of labor disputes," *Overseas Educ. Ass'n*, 824 F.2d 61, 63 (D.C. Cir. 1987), with a Congressional intent for "uniformity in the case law concerning unfair labor practices," *AFGE, Local 2510 v. FLRA*, 453 F.3d 500, 505 (D.C. Cir. 2006). The Statute contains a "two-track system for resolving labor disputes." *OEA*, 824 F.2d at 62. A party aggrieved by an unfair labor practice may go down either track, but not both. 5 U.S.C. § 7116(d). Under the first track, not pursued by the Union in this case, a party may file an unfair labor practice charge with the Authority's General Counsel, who will investigate and issue a complaint, if warranted. *Id.* § 7118(a). The matter is then adjudicated by the Authority, and

---

[*] Although the statute refers to "section 7118," the reference "has been recognized to be an error; the correct reference is to section 7116." *AFGE, Local 2510 v. FLRA*, 453 F.3d 500, 502 n.* (D.C. Cir. 2006) (quoting *Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 63 n.2 (D.C. Cir. 1987) ("*OEA*")).

the Authority's decision is subject to judicial review. *Id.* §§ 7118, 7123. Under the second track, which was followed here, a party may file a grievance in accordance with its collective bargaining agreement that alleges an unfair labor practice, a violation of the collective bargaining agreement, or both. The grievance is subject to binding arbitration, *id.* § 7121(b)(1)(C)(iii), and the arbitral award is subject to review by the Authority, *id.* § 7122(a). The Authority's order is not subject to judicial review "unless the order involves an unfair labor practice under section 711[6]" of the Statute. *Id.* § 7123(a)(1). The second track is the track for those who "prefer[] to benefit from the relatively expeditious and (presumably) final result that arbitration promise[s]." *OEA*, 824 F.2d at 66. By offering its one level of review at the administrative level, it protects Congress's interest in providing "arbitration results substantial finality." *Id.* at 63. Its limited exception that allows a second level of review—judicial review—furthers Congress's other stated interest of ensuring "a single, uniform body of case law concerning unfair labor practices." *AFGE, Local 2510*, 453 F.3d at 505.

Reading the exception broadly, then, would be contrary to "the proarbitration policy Congress articulated in passing the Act." *OEA*, 824 F.2d at 66. For that reason, we have found that judicial review is only available where the "substance of the unfair labor practice" is "'discussed in some way in, or [is] some part of, the Authority's order.'" *AFGE, Local 2510*, 453 F.3d at 505 (quoting *OEA*, 824 F.2d at 65). "A mere 'passing reference' to an unfair labor practice will not suffice," *id.* at 503, nor will the fact that "the underlying conduct could be characterized as a statutory unfair labor practice," *OEA*, 824 F.2d at 66. Instead, "the conduct must actually be so characterized and the claim pursued, by whatever route, as a statutory unfair labor practice, not as something else." *Id.* at 66.

The order need not address an unfair labor practice "on the merits" to "involve" an unfair labor practice, but it does need to include some "sort of substantive evaluation of a statutory unfair labor practice." *OEA*, 824 F.2d at 71. For example, in *OEA*, the Authority did not decide an unfair labor practice claim on the merits because it concluded that the claim was precluded by a previously-filed claim. *Id.* Its order nonetheless "involved" an unfair labor practice because it included a detailed substantive analysis and comparison of the two unfair labor practice claims such that its discussion of unfair labor practices was "no mere citation in passing." *Id.* at 70–71.

On the other hand, we have found that an order did not "involve" an unfair labor practice where the "arbitrator's decision clearly frame[d] the issue as one arising solely under the parties' collective bargaining agreements" and the Authority's order "repeat[ed] the arbitrator's statement of the issue as one sounding in contract." *U.S. Dep't of Interior v. FLRA*, 26 F.3d 179, 184 (D.C. Cir. 1994) ("*DOI*"). We have also found that the standard was not met where the Authority's order reviewing an arbitration fee award contained "neither a single mention of § 7116 (unfair labor practices) nor any discussion of the arbitrator's finding of an unfair labor practice other than passing references" to the issues in the underlying dispute. *AFGE, Local 2510*, 453 F.3d at 504. Where an order does not contain a substantive discussion of an unfair labor practice claim, there is no need to depart from Congress's "established policy 'favoring arbitration of labor disputes and accordingly granting arbitration results substantial finality,' which . . . underlies the general rule in § 7123 barring judicial review of arbitral awards" because "there is no risk the Authority will leave the path of the law of unfair labor practices and yet escape the review that would bring it back to the straight and narrow." *Id.* at 505 (quoting *OEA*, 824 F.2d at 63).

The Authority's order in this case does not "involve" an unfair labor practice under our precedent. The Authority did not engage in any substantive discussion of the Union's unfair labor practice claim in its order, but instead explicitly found that the arbitrator was justified in concluding that the substance of the unfair labor practice claim was not part of the dispute. As in *DOI*, the "arbitrator's decision clearly frames the issue as one arising solely under the parties' collective bargaining agreements," the "arbitrator analyzes the case as an alleged breach of contract," and the Authority's order "repeats the arbitrator's statement of the issue as one sounding in contract." *DOI*, 26 F.3d at 184. Therefore, as in *DOI*, the order does not "involve" an unfair labor practice.

We note that if the Union wished to protect its right to judicial review of any possible unfair labor practice claims, it could have utilized the first track provided by the Statute which leads to judicial review. Because it instead decided to proceed through the second track, it is bound by the Statute's ban on judicial review unless the Authority's order "involves" an unfair labor practice.

The Union fails in its attempt to characterize this order as involving an unfair labor practice by pointing to its effect on the Union's unfair labor practice allegations. While the Authority ensured that the Union's unfair labor practice claim will not be considered on its merits by affirming the arbitrator's framing of the issues, our caselaw is clear that the Authority's order itself must have some "bearing upon the law of unfair labor practices" in order to qualify as an order that "involve[s] an unfair labor practice." *AFGE, Local 2510*, 453 F.3d at 505. A passing reference to an unfair labor practice or a mere effect on the reviewability of an unfair labor practice claim is not enough. Because the Authority's order in this case deals solely with arbitration procedure, and neither discusses nor in any other way

affects substantive law regarding unfair labor practices, it does not "involve" an unfair labor practice. We have no jurisdiction to review the order.

### III. Conclusion

For the reasons discussed above, we dismiss the petition for lack of jurisdiction.

TATEL, *Circuit Judge*, dissenting: The court concludes that we lack jurisdiction to hear the union's challenge to a Federal Labor Relations Authority order that disposed of the union's unfair labor practice claim based solely on an arbitrator's unexplained failure to resolve that claim during the grievance process. Because I believe that the Authority's order "involves an unfair labor practice" within the meaning of section 7123(a)(1) of the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, and that the court's interpretation to the contrary finds no support in our precedent, I respectfully dissent.

**I.**

As the court correctly observes, the statute establishes a two-track system in which an aggrieved union can either file an unfair labor practice charge with the Authority's General Counsel or submit a grievance to binding arbitration, but may not do both. *See Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 62-63 (D.C. Cir. 1987) ("*OEA*"). In this case, the union chose to pursue its unfair labor practice claim through the grievance process. In its pre-hearing brief before the arbitrator, the union argued that the employer committed unfair labor practices in two ways: by changing employee working conditions without affording the union notice and an opportunity to bargain; and by committing a clear and patent breach of the collective bargaining agreement. Although the court mentions only the latter allegation, *see* Maj. Op. at 2-3, the arbitrator explicitly acknowledged both claims in her opinion. Despite reciting the union's unfair labor practice charges nearly verbatim, the arbitrator nonetheless framed the issue before her as arising solely under the parties' collective bargaining agreement. Finding no breach of that agreement, she denied the union's grievance. In so doing, the arbitrator offered no explanation for failing to address the union's unfair labor practice claim.

2

When the union appealed to the Authority, arguing that the arbitrator improperly ignored its unfair labor practice claim, the employer countered that the arbitrator had in fact addressed the alleged unfair labor practices, but had simply found against the union. *Ass'n of Civilian Technicians, N.Y. State Council*, 60 F.L.R.A. 890, 891 (2005). Correcting this inaccurate assertion, the Authority "agree[d] with the union that the Arbitrator did not address whether [the employer]'s actions constituted unfair labor practices under the Statute." *Id.* Nonetheless, the Authority upheld the arbitrator's award, reasoning that "[i]n the absence of a stipulation that . . . included the issue of whether the [employer] committed any unfair labor practices, the Arbitrator was not obligated to address and resolve whether the [employer]'s actions violated the Statute." *Id.*

Still seeking some resolution to its unfair labor practice claim, the union moved for reconsideration, arguing that the statute provides for (1) a unilateral right to have an unfair labor practice claim resolved through the grievance process and (2) appeals to both the Authority and the U.S. Court of Appeals. The Authority denied the motion, again citing its general policy of deferring to an arbitrator's framing of the issues absent an employer stipulation. *Ass'n of Civilian Technicians, N.Y. State Council*, 61 F.L.R.A. 664, 666-67 (2006) ("*ACT*").

The union petitioned for review, arguing that the Authority had denied what the statute expressly requires: resolution of its unfair labor practice claim. The court now dismisses the union's petition for lack of jurisdiction under section 7123(a)(1), reasoning that the Authority's order merely "involves rules applicable to arbitration" that happened to result "in the unfair labor practice claim's exclusion from review." Maj. Op. at 4. In my view, this result ignores the facts of this dispute and conflicts with both the statute and our precedent.

**II.**

Section 7123(a)(1) allows this court to hear appeals from Authority decisions reviewing arbitral awards if the award "involves an unfair labor practice," a standard we have addressed in some depth on three separate occasions.  In *OEA*, we considered two separate Authority orders, finding ourselves with jurisdiction over one order because it "necessarily implicated" an unfair labor practice claim, but without jurisdiction over the other because the union had pursued its claim on a contract theory.  824 F.2d at 69, 71.  In *U.S. Dep't of the Interior v. FLRA*, 26 F.3d 179 (D.C. Cir. 1994) ("*DOI*"), we found ourselves without jurisdiction because the union had made only two "passing references" to unfair labor practices and had pursued its claim as a contract action.  *Id.* at 183-84.  And in *AFGE, Local 2510 v. FLRA*, 453 F.3d 500 (D.C. Cir. 2006), we found ourselves without jurisdiction over an Authority order that not only failed to "engage at all with the substance of the unfair labor practice," but dealt solely with attorneys' fees.  *Id.* at 505.  Taken together, these three cases demonstrate that we have jurisdiction to review an Authority order if (1) the aggrieved union consistently pursued its claim as an unfair labor practice throughout the grievance process, (2) the Authority's order necessarily implicates the unfair labor practice claim, and (3) the order discusses the substance of the unfair labor practice claim in some way.  This case satisfies all three requirements.

First, as the court correctly notes, for us to have jurisdiction, a union must characterize and pursue its claim "as a statutory unfair labor practice, not as something else."  Maj. Op. at 5 (quoting *OEA*, 824 F.2d at 66).  In language directly applicable to this case yet absent from the court's opinion, we stated in *OEA* that "[i]t is clear that if a dual-natured type of complaint were *pursued* as a statutory unfair labor practice, *any* FLRA

order would be subject to judicial review under section 7123(a)(1), even if the aggrieved party chose to utilize the grievance/arbitration route." 824 F.2d at 64 (emphases altered). Reaffirming this principle in *DOI*, we stated, even more categorically, "[i]f the aggrieved party chose to go the grievance procedure route, but characterized its claim as a statutory unfair labor practice, judicial review *certainly would be available*." 26 F.3d at 183 (emphasis added). The central thrust of both *OEA* and *DOI*, in other words, is that a union may not pursue its grievance on a breach of contract theory only to transform it belatedly into an unfair labor practice claim in an effort to obtain judicial review.

Here, the union did no such thing. It consistently characterized its claim as an unfair labor practice and pursued it as such throughout the grievance process. As noted above, the union began its pre-hearing brief with its unfair labor practice allegations. In her statement of the parties' positions, the arbitrator spent two paragraphs repeating those allegations. The employer certainly believed the union had raised the claim, even arguing that the arbitrator had actually decided it. The union reasserted its unfair labor practice claim in its exceptions to the arbitral award and pursued it again in its motion for reconsideration. In short, the union consistently characterized the employer's conduct "as a statutory unfair labor practice, not as something else." Maj. Op. at 5 (quoting *OEA*, 824 F.2d at 66).

Attempting to minimize this fact, the court analogizes this case to *DOI* where, as here, the "arbitrator's decision clearly frame[d] the issue as one arising solely under the parties' collective bargaining agreements," the "arbitrator analyze[d] the case as an alleged breach of contract," and the Authority's order "repeat[ed] the arbitrator's statement of the issue as one sounding in contract." Maj. Op. at 7 (quoting *DOI*, 26 F.3d at

184). This is all true, but irrelevant. The unions in *DOI*, unlike the union here, failed to pursue their claims as statutory unfair labor practices. Instead, the unions insisted their case was "governed by simple contract law," and included only two "essentially gratuitous" references to unfair labor practices in their post-hearing briefs. *DOI*, 26 F.3d at 183-84. That both the arbitrator and Authority characterized the case as a contractual dispute is therefore hardly surprising.

Second, our case law makes clear that for us to have jurisdiction the Authority's order must "necessarily implicate[]" an unfair labor practice claim. *OEA*, 824 F.2d at 68. This language is also conspicuously absent from the court's opinion, even though it is the test we adopted in *OEA* (borrowing the standard from then-Judge Kennedy's opinion in *U.S. Marshals Service v. FLRA*, 708 F.2d 1417, 1420 (9th Cir. 1983)), and have repeated in every subsequent case presenting this jurisdictional question. *OEA*, 824 F.2d at 67-68 ("[T]he standard is that a statutory unfair labor practice must be either an explicit ground for, or be necessarily implicated by, the Authority's decision.") (footnote omitted); *see also AFGE, Local 2510*, 453 F.3d at 504; *U.S. Dep't of Treasury, U.S. Customs Serv. v. FLRA*, 43 F.3d 682, 687 n.5 (D.C. Cir. 1994); *DOI*, 26 F.3d at 183.

Here, the Authority's order "necessarily implicated" the union's unfair labor practice claim by effectively terminating it. Put another way, before the Authority issued its order, the union had a viable unfair labor practice claim, albeit one that the arbitrator had inexplicably ignored. After the Authority ruled, however, the union's claim was irretrievably lost. Because section 7116(d) forbids the union from re-filing its allegations with the General Counsel, the Authority's order represents the last word on the union's claim. *See AFGE, Local 1411 v. FLRA*, 960 F.2d 176, 178 (D.C. Cir. 1992) (noting that the purpose of section 7116(d) is "to preclude duplicative proceedings by

requiring an aggrieved party to make an election of remedies" when "the same facts and the same decision are involved"). That the Authority grounded its decision in arbitration procedure does nothing to change the order's ultimate effect on the union's unfair labor practice claim. In short, by disposing of the union's claim for all time, the Authority's order must "necessarily implicate[]" it. *OEA*, 824 F.2d at 67-68.

To reach the opposite conclusion, the court relies heavily on *AFGE, Local 2510*, but that case provides a telling contrast to the issue presented here. In *AFGE, Local 2510*, the arbitrator had decided the union's unfair labor practice claim in the union's favor, and the employer declined to challenge that ruling before the Authority, instead appealing only the arbitrator's award of attorneys' fees to the union. 453 F.3d at 502-03. As a result, the Authority's order "addressed only the fee award." *Id.* at 504. We dismissed the union's petition for lack of jurisdiction, emphasizing that the Authority's order—not the arbitral award—must involve an unfair labor practice for us to have jurisdiction. *Id.* at 505. Here, of course, the arbitral award includes no resolution of the union's statutory claim, but that is the entire point of the union's appeal. Unlike its counterpart in *AFGE, Local 2510*, the union here does not attempt to bootstrap an ancillary issue onto a previously decided unfair labor practice claim in order to obtain judicial review. Rather, the union argues that it deserves resolution of its statutory claim in the first instance. Thus, although we concluded that the Authority's order in *AFGE, Local 2510* did not "necessarily implicate" an unfair labor practice claim, *id.* at 504, the facts support the opposite conclusion here.

Finally, as the court points out, we will review an Authority's order when the "substance of the unfair labor practice" is "'discussed in some way in, or [is] some part of, the Authority's order.'" Maj. Op. at 5 (quoting *AFGE, Local 2510*,

453 F.3d at 505). Here, the Authority argues that it never "assess[ed] the substance of the alleged [unfair labor practice] *at all* in the instant case." Resp't's Br. 20 (emphasis added). In a similar vein, the court states that "the Authority did not engage in *any* substantive discussion of the union's unfair labor practice claim in its order." Maj. Op. at 7 (emphasis added). The record shows otherwise. In denying the union's motion for reconsideration—in an order challenged here—the Authority included the following substantive discussion of the union's claims:

> Even if we were to address the alleged unfair labor practices, we would nonetheless find that the denial of the grievance was not deficient. Specifically, the Arbitrator found that the [employer] did not breach the agreement. Authority precedent establishes that unless there is a breach of an agreement, there can be no repudiation in violation of the Statute, as was alleged by the union at arbitration. *See, e.g.*, *Dep't of the Air Force, 375th Mission Support Squadron, Scott Air Force Base, Ill.*, 51 F.L.R.A. 858, 862 (1996) (the first element that must be established to support an allegation of repudiation in violation of the Statute is that the respondent's actions constituted a breach of the agreement that was clear and patent). In addition, the record establishes that the Arbitrator enforced lawful, agreed-upon limits on the obligation to bargain and that, consequently, the [employer]'s actions did not constitute a failure to bargain. *See AFGE Local 3529*, 52 F.L.R.A. 1313, 1319-20 (1997).

*ACT*, 61 F.L.R.A. at 666 n.4.  The Authority thus addressed both of the union's unfair labor practice allegations.  To be sure, the Authority's discussion does not amount to a decision on the merits of the union's claim, but "something less than treatment 'on the merits' is required" for us to have section 7123(a)(1) jurisdiction.  *OEA*, 824 F.2d at 71.

Ignoring the Authority's order denying rehearing, the court demands more.  Quoting half a sentence from *OEA*, it explains that to confer jurisdiction, the Authority's order "does need to include some 'sort of substantive evaluation of a statutory unfair labor practice.'"  Maj. Op. at 6 (quoting *OEA*, 824 F.2d at 71).  But in the portion of the sentence not quoted by the court, we concluded that "th[e] sort of substantive evaluation" at issue in that case "*abundantly suffice[d]* to satisfy the relatively imprecise 'involves' standard of section 7123(a)(1)."  *OEA*, 824 F.2d at 71 (emphasis added).  Although the discussion here may not "abundantly suffice[] to satisfy" section 7123(a)(1), it suffices nonetheless.  Not only does the Authority's order include a "substantive evaluation" of the union's claim, but that evaluation, though dictum, carries precedential weight in future Authority proceedings.  *See, e.g.*, *Def. Sec. Assistance Dev. Ctr.*, 60 F.L.R.A. 292, 294 (2004) (citing Authority dicta while analyzing a claim); *U.S. Border Patrol Livermore Sector Dublin, Cal.*, 58 F.L.R.A. 231, 233 (2002) (same); *AFGE, Local 32*, 51 F.L.R.A. 491, 502 (1995) (same).

In sum, the union pursued its statutory claim throughout the grievance process, the Authority's order "necessarily implicated" that claim by terminating it, *OEA*, 824 F.2d at 68, and the Authority discussed the substance of the claim "in some way."  *AFGE, Local 2510*, 453 F.3d at 505 (quoting *OEA*, 824 F.2d at 65).  We have never demanded more to find jurisdiction.

## III.

For the foregoing reasons, I would find section 7123(a)(1) jurisdiction and go on to review the Authority's conclusion that an arbitrator has no obligation to resolve a union's unfair labor practice claim unless an employer stipulates to that claim. The union argues that under a plain reading of the statute, "a union that raises an [unfair labor practice] claim as a grievance has a unilateral right to demand that the claim be resolved by binding arbitration." Pet'r's Opening Br. 24.

The union's textual argument proceeds as follows. Section 7116(d) expressly allows unions to raise unfair labor practice claims in grievance procedures, and section 7121(a)(1), in turn, requires those procedures to be processes for "*resolving* grievances*" (emphasis added). Then, citing section 7121(b)(1)(C)(iii), the union argues that because either party to a dispute may demand that "any grievance not satisfactorily settled . . . be subject to binding arbitration," the statute grants unions the right to have unfair labor practice claims "resolved" through arbitration. According to the union, allowing a statutory claim to vanish if an employer refuses to stipulate to it conflicts with the statute because the grievance procedure would then fail to "resolve" the grievance.

The union reads the statute correctly. "Resolve" means "to reach a decision about" or "settle." Webster's Third New International Dictionary 1933 (1993). Under the Authority's "no obligation" rule, however, the grievance process may end without deciding a union's unfair labor practice claim or settling it in any meaningful sense. The claim can simply evaporate.

The Authority offers no response to the union's textual argument. Instead, it argues that not all unfair labor practice claims are ultimately "resolved" under the statute. As the

Authority points out, if the General Counsel declines to issue a complaint upon a union's request, the issue never reaches the Authority for review. The statute, however, requires the General Counsel to give the union a written statement of reasons for declining to issue a complaint. *See* 5 U.S.C. § 7118(a)(1) ("In any case in which the General Counsel does not issue a complaint because the charge fails to state an unfair labor practice, the General Counsel shall provide the person making the charge a written statement of the reasons for not issuing a complaint."). Under the Authority's rule, unions choosing to pursue their unfair labor practice claims through arbitration—their right under the statute—can be denied even this.

At bottom, the Authority argues that the arbitrator resolved the union's claim by ignoring it. Because I believe the statute requires more, I would grant the union's petition for review and remand the case to the Authority with instructions to return it to the arbitrator for a decision on the merits of the union's unfair labor practice claim.

## IV.

Contrary to the court's view—and to return to the jurisdictional issue—my disposition would further Congress's strong pro-arbitration policy by guaranteeing unions some resolution of their unfair labor practice claims through grievance procedures. The court's decision, by contrast, will discourage unions from choosing the very grievance and arbitration process that Congress seeks to promote. Eager to preclude judicial review, employers will have no incentive to stipulate to a union's unfair labor practice claim in arbitration and every reason not to do so. Unions, in turn, will justifiably fear that arbitrators will ignore their properly raised statutory claims without explanation, rendering those claims lost for all time.

The result is easy to predict: instead of seeking arbitration, unions will file unfair labor practice charges with the General Counsel.  Indeed, unions would be wise to follow this course, for if the General Counsel declines to pursue their unfair labor practice claims, they will at least receive a written explanation. As this case makes abundantly clear, however, unions choose the grievance track at their peril.

Finally, my proposed disposition, unlike the court's decision, would ensure "a single, uniform body of case law concerning unfair labor practices." *AFGE, Local 2510*, 453 F.3d at 505.  If, on remand, the arbitrator ruled against the union, the union could appeal to the Authority.  Judging from the merits discussion in the Authority's denial of the union's motion for reconsideration, I think it safe to assume that the Authority would find against the union. If the union sought review here, we could then perform our statutory function by ensuring that the Authority had not left "the path of the law of unfair labor practices" while "escap[ing] the review that would bring it back to the straight and narrow." *Id.*  By short-circuiting this process, the court denies us that opportunity.