# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 20-1233**                    **September Term, 2020**

FILED ON: APRIL 30, 2021

NATIONAL LABOR RELATIONS BOARD PROFESSIONAL ASSOCIATION,
            PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
            RESPONDENT

———

On Petition for Review of an Order of the Federal Labor Relations Authority

———

Before: MILLETT, WILKINS, and RAO, *Circuit Judges*.

## J U D G M E N T

This case was considered on the record from the Federal Labor Relations Authority, as well as on the briefs of the parties.   We have accorded the issues full consideration and determined that they do not warrant a published opinion.   *See* D.C. CIR. R. 36(d).   It is

**ORDERED AND ADJUDGED** that the petition for review be **DISMISSED**.

The professional employees of the National Labor Relations Board are usually responsible for adjudicating other parties' labor disputes, but in this case they find themselves embroiled in one. In January 2018, the Board decided to close its employee health unit.   In response, the professional employees' union—the NLRB Professional Association ("Association")—filed a grievance under its collective bargaining agreement.   When the Board denied the grievance, the Association invoked arbitration.   The arbitrator concluded, though, that he could not reach the merits of the dispute because the grievance was untimely filed under the collective bargaining agreement's terms.   The Federal Labor Relations Authority ("Authority") affirmed the arbitrator's decision.

The Association now asks us to review the Authority's order.   We lack jurisdiction to do so because the order turns entirely on the application of contractual terms, and neither explicitly nor implicitly involves the substance of an unfair labor practice ruling.

1

# I

The Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101–7135, governs labor disputes between the federal government and its employees. The Statute sets out "a two-track system for resolving labor disputes." *Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 62 (D.C. Cir. 1987). An aggrieved party "may elect either track—the statutory complaint procedure or binding arbitration—but not both." *United States Dep't of Navy v. FLRA*, 665 F.3d 1339, 1344 (D.C. Cir. 2012).

Under the first track, a party may file an unfair labor practice charge with the Authority's General Counsel. The General Counsel will investigate and issue a complaint if warranted. 5 U.S.C. § 7118(a). The Authority then adjudicates the complaint, and its decision is subject to judicial review. *Id.* §§ 7118, 7123. *See generally Association of Civilian Technicians, N.Y. State Council v. FLRA*, 507 F.3d 697, 699 (D.C. Cir. 2007). The Association did not pursue this first route in this case.

Under the second track—which is what the Association chose to pursue here—parties may submit grievances to one another under the terms of their mutually negotiated collective bargaining agreement that allege a statutory unfair labor practice, a violation of the collective bargaining agreement, or both. *See* 5 U.S.C. § 7121(a)–(b). If the parties cannot resolve their grievance, it is subject to binding arbitration, *id.* § 7121(b)(1)(C)(iii), and the arbitral award is then subject to review by the Authority, *id.* § 7122(a).

Importantly for this case, the Authority's order on review of the arbitration award is not subject to judicial review unless the arbitral order "involves an unfair labor practice under section 711[6]" of the Statute. 5 U.S.C. § 7123(a)(1); *see Association of Civilian Technicians*, 507 F.3d at 699.[1] In other words, in arbitration cases, judicial review is available if, and only if, the "'substance of the unfair labor practice' is 'discussed in some way in, or [is] some part of, the Authority's order.'" *Association of Civilian Technicians*, 507 F.3d at 699 (alteration in original) (quoting *AFGE, Local 2510 v. FLRA*, 453 F.3d 500, 505 (D.C. Cir. 2006)). "A mere 'passing reference' to an unfair labor practice will not suffice, nor will the fact that 'the underlying conduct could be characterized as a statutory unfair labor practice[.]'" *Id.* (citation omitted) (first quoting *AFGE, Local 2510*, 453 F.3d at 503; and then quoting *Overseas Educ. Ass'n*, 824 F.2d at 66). Instead, "the conduct must actually be so characterized" by the Authority, and "the claim pursued * * * as a statutory unfair labor practice, not as something else." *Id.* (quoting *Overseas Educ. Ass'n*, 824 F.2d at 66) (formatting modified).

All of that means that this court can review an Authority decision on an arbitration award only if its decision "contain[s] a substantive discussion of an unfair labor practice claim[.]" *Association of Civilian Technicians*, 507 F.3d at 700. That discussion need not be "explicit," as

---

[1] Although the Statute refers to "section 7118," we have recognized that to be a mistake and that "the correct reference is to section 7116." *Department of Navy*, 665 F.3d at 1345 n.2 (quoting *Overseas Educ. Ass'n,* 824 F.2d at 63 n.2).

long as the Authority's order "*necessarily* implicates a statutory unfair labor practice" in the ruling. *Department of Navy*, 665 F.3d at 1345 (emphasis added; formatting modified); *see also Broadcasting Board of Governors Office of Cuba Broadcasting v. FLRA*, 752 F.3d 453, 457 (D.C. Cir. 2014) (same).

## II

### A

In 2017, the White House informed the National Labor Relations Board that the Board was likely to suffer funding cuts in upcoming federal budget negotiations.   A working group proposed, among other things, eliminating the on-premises health unit.   In January 2018, the Board unanimously agreed to close the health unit.

Chairman Kaplan notified the Association of the Board's decision on January 29, 2018.   The Board's Labor Relations Counsel reconfirmed that it would close the health unit in a February 1, 2018 email and a February 8, 2018 memorandum to the Association.   On February 7th, the Association demanded to bargain over the cut, and it reiterated its demand on February 28th.   The Board's Human Resources Department notified all employees on March 6, 2018 that the health unit would be terminated effective March 31st.

The Association filed a grievance on March 7, 2018, alleging violations of nine provisions of the parties' collective bargaining agreement, as well as Sections 7116(a)(1), (5), and (6) of the Statute.   The Association specifically alleged that there had been no negotiations over the closure of the Health Unit, and "[t]he [Board] has treated not only the closure, but its effects on employees, as a *fait accompli*[,]" in violation of the collective bargaining agreement and the Statute.   J.A. 38–39.

The Board denied the grievance, and the Association invoked its right to arbitration.

### B

The parties' collective bargaining agreement sets a strict time limit on the filing of grievances, requiring that they be filed "in writing" within ten business days of "the date on which the aggrieved party or an Association representative (officer or steward) had knowledge of the facts giving rise to the grievance[.]"   J.A. 134.   As relevant here, the agreement defines a grievance as "any complaint" by the Association "concerning—(1) the effect or interpretation, or claim of breach, of [the collective bargaining agreement]; or (2) any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment."   J.A. 132.

When a grievance is sent to arbitration, the parties' collective bargaining agreement requires the arbitrator to decide, upon the request of any party, any threshold "questions of grievability or arbitrability * * * prior to the opening of a hearing on the substantive allegations of the grievance." J.A. 140.

3

The Board did just that. Before the arbitration hearing, the Board challenged the timeliness of the Association's grievance as a threshold issue of arbitrability. The Board alleged that the Association had knowledge of facts giving rise to the grievance more than ten business days before it filed the grievance.

The arbitrator agreed. He found that the Association was aware of the decision to abolish the health unit as early as January 29th, when Chairman Kaplan provided Association President Cook with the list of Board-approved cuts. The arbitrator further found that the Association certainly was aware of that fact "no later than February 1" when the Board's Labor Relations Counsel emailed the Association to "confirm" that the cost cuts, including the health unit closure, "have been approved by the Board" and "will be implemented no later than March 1, 2018." J.A. 19. And February 1st was far more than ten business days before the filing of the grievance on March 7th.

The Association filed exceptions to the arbitrator's decision with the Authority, but a unanimous Authority panel denied the exceptions and ruled that the grievance was not timely filed under the terms of the collective bargaining agreement. *NLRB Prof'l Ass'n*, 71 F.L.R.A. 737, 738 (2020). The Authority made clear that the case "concerns only procedural arbitrability" and that none of the Association's exceptions to the arbitrator's procedural decision had merit. *Id.*

The Association then filed a petition for review of the Authority's decision in this court.

### III

### A

Because the Authority's purely procedural and threshold determination of timeliness under the terms of the collective bargaining agreement neither explicitly nor implicitly involves a substantive ruling addressing or finding an unfair labor practice under the Statute, we lack jurisdiction to review the Authority's decision. We have specifically held that we lack jurisdiction to review an order of the Authority that solely involves procedural "rules applicable to arbitration which, when applied in [a] dispute, result[] in the unfair labor practice claim's exclusion from review." *Association of Civilian Technicians*, 507 F.3d at 698–699; *see id.* at 699–700; *Cuba Broadcasting*, 752 F.3d at 457.

In this case, the Authority self-evidently did not "reach and discuss the merits of a statutory unfair labor practice[.]" *See Cuba Broadcasting*, 752 F.3d at 457. The Authority emphasized that the arbitrator whose decision it was reviewing "made no findings regarding the merits of the grievance[,]" and instead confined his analysis to the question of "whether the grievance was arbitrable" under the collective bargaining agreement's timely filing requirement. *NLRB Prof'l Ass'n*, 71 F.L.R.A. at 739, 740. The Authority's decision did not say a word about the merits of the underlying statutory unfair labor practice claims in upholding the arbitral decision.

The Authority also did not implicitly "affect substantive law regarding a statutory issue," *Cuba Broadcasting*, 752 F.3d at 457 (formatting modified), because the Authority simply

4

adjudicated issues concerning the collective bargaining agreement's threshold timely filing requirement. Nowhere did the Association allege that the arbitrator's decision misapplied any *statutory* timing requirement. *NLRB Prof'l Ass'n*, 71 F.L.R.A. at 739. As a result, in upholding the arbitrator's decision, the Authority referred only to the collective bargaining agreement and its own procedural arbitrability precedent. *Id.* at 740 & n.35.

In short, the Authority's order involved nothing doctrinal at all. It ruled only that the arbitrator properly read the collective bargaining agreement's timely-filing provision and counted days on the calendar. Statutory labor law had nothing to do with it.

**B**

The Association raises four arguments, none of which mend the jurisdictional flaw in this case.

First, the Association contends that the Authority's order substantively affected the law of unfair labor practices because the Authority affirmed the arbitrator's holding that the Association had knowledge of the facts giving rise to the grievance when it became aware of the Board's *decision* to close the health unit. The Association argues that this is out of step with longstanding precedent that starts the statute of limitations for statutory unfair labor practice claims at the *implementation* of the decision for which bargaining is sought.

That argument confuses the statutory time limit with the one set by the collective bargaining agreement. The Association is correct that, had it proceeded on the statutory track for adjudication of its charge, its claim would have been timely. 5 U.S.C. § 7118(a)(4)(A) ("[N]o complaint shall be issued based on any alleged unfair labor practice which occurred more than 6 months before the filing of the charge with the Authority.").

But that is beside the point because the Association chose to proceed on the arbitration track, and in its ruling the Authority enforced only the collective bargaining agreement's (stricter) timing requirement. *NLRB Prof'l Ass'n*, 71 F.L.R.A. at 740 ("[T]he Arbitrator did not err by relying on the Union's institutional knowledge that the [Board] had made the decision to close the health unit—rather than the [Board]'s email informing employees of this decision—to determine when the Union knew the facts giving rise to the grievance."); *see* J.A. 134 (collective bargaining agreement's ten-business-day clock starts when the Association "had knowledge of the facts giving rise to the grievance"). The Association, for its part, makes no argument as to how the Authority's enforcement of the collective bargaining agreement's time limit either explicitly or implicitly involved the determination of when an unfair labor practice "occur[s]" for purposes of Section 7118(a)(4)(A). Nor could it have, given the Association's concession that Section 7118(a)(4)(A) has no bearing on this arbitration case. *See* Ass'n Br. 22 ("At no point has the [Association] ever alleged that the *procedural* requirements of the Statute—namely, the sixth-month [*sic*] statute of limitations in Section 7118(a)(4)(A) that governs the filing of unfair-labor-

5

practice charges, 5 U.S.C. § 7118(a)(4)(A)—apply to this case.").[2]

Second, the Association argues that the dispute before the arbitrator solely concerned a "purely legal dispute over the meaning and elements of a unilateral-change unfair labor practice[.]" Ass'n Br. 14. Even if that were true, jurisdiction turns on the nature of the Authority's decision, not the content of the arbitrator's decision or the arguments made in a party's briefs. And the Authority's decision said nothing about that substantive legal dispute. Instead, the Authority's decision turned exclusively on a determination that the arbitrator did not act contrary to law, unreasonably formulate the issue before him, or exceed his authority in calculating compliance with the contractual time limit. We do not have jurisdiction unless the Authority's order *itself* "bear[s] upon the law of unfair labor practices[.]" *Association of Civilian Technicians*, 507 F.3d at 700 (quoting *AFGE, Local 2510*, 453 F.3d at 505).

The Association's argument that its underlying "legal claim arose from Section 7116(a)(5) of the Statute, not the parties' contract," Ass'n Reply Br. 5, is equally inapt. Jurisdiction turns on what the Authority ruled, not what contractual grievance a party asserted. *See* 5 U.S.C. § 7123(a)(1) (no jurisdiction "unless the [Authority's] *order* involves an unfair labor practice") (emphasis added).

Third, we cannot exercise jurisdiction simply because the Authority happened to "note the existence of an unfair labor practice claim" in describing the case before it. *Cuba Broadcasting*, 752 F.3d at 457. What matters is what the Authority's ruling "involves[.]" 5 U.S.C. § 7123(a)(1); *see Cuba Broadcasting*, 752 F.3d at 457 (no jurisdiction where the Authority "mentioned the Union's unfair labor practice claim only in a footnote and only to explain why it had no need to consider the claim").

Here, in explaining why the arbitrator's procedural arbitrability determination was proper, the Authority briefly observed that the Association's "grievance alleged that the [Board] violated" the unfair labor practices statute "by closing the health unit." *NLRB Prof'l Ass'n*, 71 F.L.R.A. at 740 (internal quotation marks omitted). The Authority added that the Association's grievance "neither explicitly alleges nor explains" why the inclusion of that claim meant that that the contractual time limit was not triggered until the Board "'unilaterally implement[ed]' th[e] closure"—that is, when the Board's Human Resources Department sent its all-employee email on March 6th—rather than when the Association learned of the closure. *Id.*

The Association argues that, through this oblique reference, the Authority decided that "as a matter of law, * * * an unfair labor practice occurs when an agency makes the decision to impose a unilateral change, rather than when the change is actually implemented and employees' terms of employment are actually affected." Ass'n Reply Br. 6 (emphasis omitted). The Authority did no such thing. The Authority had no occasion to opine on when an unfair labor practice "occur[s]" as a matter of substantive unfair labor practice law, 5 U.S.C. § 7118(a)(4)(A). All the Authority

---

[2] The Association does not argue that the collective bargaining agreement somehow incorporated the terms of the statutory time bar, 5 U.S.C. § 7118(a)(4)(A).

did is affirm the arbitrator's conclusion that, under the plain language of the contract, the time limit is triggered when the entity filing the grievance—the Association—had knowledge of its complaint. *See* J.A. 134 ("[T]he Association[] shall present the grievance * * * within ten (10) business days following the date on which the aggrieved party or an Association representative (officer or steward) had knowledge of the facts giving rise to the grievance."). More to the point, the Authority referenced the alleged statutory violation only in the course of rejecting the Association's contention that the arbitrator wrongly started the clock on its filing of a grievance under the terms of the *contractual* time limit. Nothing about that amounts to a ruling, directly or by implication, "bearing upon the law of unfair labor practices." *Association of Civilian Technicians*, 507 F.3d at 700 (quoting *AFGE, Local 2510,* 453 F.3d at 505).

The Association stresses that the length of the Authority's discussion of the unfair labor practice claim asserted was comparable to those in prior cases where jurisdiction was found. Maybe. But jurisdiction turns on the substance of the Authority's ruling, not a word count. What matters for jurisdictional purposes is that the portion of the order to which the Association points does nothing more than describe the nature of the Association's contractual grievance. *See NLRB Prof'l Ass'n*, 71 F.L.R.A. at 739–740.

Finally, the Association argues that we ought to consider the unique circumstances under which this case arose. Specifically, the Association contends that a longstanding vacancy in the Authority's General Counsel's office effectively rendered the first statutory track of filing a complaint with that office unavailable because it cannot process unfair labor practice charges without an appointed General Counsel. But the absence of a General Counsel does not change the reality that the Authority's decision did not "involve" an unfair labor practice. And we have no authority to except ourselves from a strict jurisdictional limit imposed by Congress. *See Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040 (D.C. Cir. 1986).

## IV

Because we lack subject matter jurisdiction, we must dismiss the Association's petition.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

FOR THE COURT:
Mark J. Langer, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk